The CITY OF HOUSTON,
Appellant/Cross-Appellee,

v.

Charles GOINGS and Karen Goings,
Appellees/Cross-Appellants,

and

Snead Site Preparation
Company, Appellee.

No. C14-88-735-CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 1990.
Rehearing Denied Sept. 13, 1990.

Joseph A. Callier, Houston, for appellant.

Robert Filteau, G. Byron Sims, James R. Koecher, Thomas J. Pearson, Donna C. Kline, Houston, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

The City of Houston [the City] appeals from a judgment on the jury's verdict in favor of Charles and Karen Goings in a personal injury action. The action arose from injuries suffered by Goings when a bridge collapsed during demolition work. We affirm the judgment of the trial court.

Goings was employed by Snead Site Preparation. Snead was awarded a contract for demolition of the 69th Street bridge, part of the overall "Clinton Drive Connection To U.S. 90–A" highway construction project. The structure was a type of hybrid suspension bridge. Although it appeared to be supported by the piers beneath it, the bulk of the bridge's weight was actually supported by the bas-

ketwork trusses extending from the shores of the bayou. Snead, having no previous experience in bridge demolition, began dismantling the superstructure of trusses without first creating any compensating support system beneath the bridge. Because the center section was counter-balanced, it was removed without incident. However, as the welders cut the trusses on the south section, the bridge collapsed, the steel "ripping like paper" and Goings was injured. The Goings filed suit against the City, which cross-claimed against Snead seeking indemnity or contribution.

The jury found that the City failed to use ordinary care to select a competent contractor; retained control over the manner in which the work was done; failed to use ordinary care in the exercise of that control; and that each of those was a proximate cause of the bridge collapse. The jury also found that the City knew, or should have known, when it hired Snead that the bridge demolition would create an unreasonable risk of harm to the workmen unless special precaution were taken; that the City negligently failed to ensure that such precautions were taken; and that failure was a proximate cause of the bridge collapse. The jury did not find Goings acted negligently, and attributed 100% of the negligence to the City.

■■■ The City contends the trial court erred by ruling that the activities surrounding the bridge demolition were proprietary rather than governmental and, thus, not protected by governmental immunity.[1] The City is correct in asserting that a decision to open or close a street or bridge is uniquely governmental and immune. However, the Goings' cause of action did not arise from any such decision. The bridge demolition for which Snead was hired was part of a larger construction project to build a new highway interchange. Ministerial acts that can be performed by private subcontractors are generally proprietary functions, the negligent performance of which will subject a city to liability. *City*

of Round Rock v. Smith, 687 S.W.2d 300, 303 (Tex.1985). Street construction and maintenance has long been held to be a proprietary function, and the City is liable for its negligence in the performance of this function. *Id.; Jezek v. City of Midland*, 605 S.W.2d 544, 546 (Tex.1980); *Turvey v. City of Houston*, 602 S.W.2d 517, 518 (Tex.1980). A public bridge forming a connecting link in a street or highway is a part of that street or highway. *City of San Antonio v. Haynes*, 5 S.W.2d 205, 207 (Tex.Civ.App.—El Paso 1928, no writ); *see also City of San Antonio v. Hamilton*, 714 S.W.2d 372, 375 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (holding the design and construction of a low water crossing was a ministerial act that could be performed by a private subcontractor, thus, a proprietary function). Once the City made the decision to proceed with the construction project, it had a duty to act with reasonable care or be subject to liability for its negligence. The City's first point of error is overruled.

■■■ The City next contends the trial court improperly entered judgment because the Goings failed to plead or prove an exception to governmental immunity. Such pleadings and proof are required only if a party seeks recovery under Tex.Civ. Prac. & Rem.Code Ann. §§ 101.001–101.109 (Vernon 1986 & Supp.1990), more commonly referred to as the Texas Tort Claims Act. Since the City's activities were not governmental functions, the Tort Claims Act is inapplicable. Point of error two is overruled.

■■■ In its third point of error, the City complains the trial court erred by failing to grant its motion for continuance. The City asserts that its discovery, just a few weeks before trial, that Goings' had received certain medical treatment in the 1960's and 1970's, required the trial court to grant its motion. The grant or denial of a motion for continuance is within the sound discre-

---

1. Although the 1987 amendment to Tort Claims Act makes street or bridge design, construction or maintenance by a municipality a governmental function, this case was filed in 1985 and is governed by the earlier statute and the cases interpreting it. Tex.Civ.Prac. & Rem.Code Ann. § 101.022 (Vernon Supp.1990) (see historical note).

tion of the trial court. That decision will not be disturbed on appeal unless the record reveals a clear abuse of discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986).

The City received notice of Goings' claim in early 1985; suit was filed that summer. The case was re-set a number of times. The Goings conducted a great deal of discovery. Although, the Goings designated their medical witnesses and made them available for deposition, the City elected not to depose them. It was reasonable for the trial court to assume that, had the City deposed the proffered witnesses, it would have discovered Goings' medical history at a much earlier date. Despite the questionable relevance of the records sought, Goings' counsel expedited their delivery to the City.

Nothing in the record indicates the trial court acted arbitrarily or without references to guiding principles. Point of error number three is overruled.

■ The City's fourth point of error challenges the factual sufficiency of the evidence to support the jury's response to Special Question 12. Question 12 asked, "[d]o you find that on the occasion in question Charles Goings was negligent?", and the jury answered, "No".

■ When a factual sufficiency point is raised, we must weigh and consider all the evidence, both that in support of and that contrary to the challenged finding. The jury's finding must be upheld unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor,* 715 S.W.2d 629, 635 (Tex.1986). We may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 896 (1951); *Thompson v. Wooton,* 650 S.W.2d 499, 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Further, the jury, as trier of the facts, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

There is ample evidence from which the jury could have reach its conclusion that Goings was not negligent. Point of error four is overruled.

■ In its fifth point of error, the City contends the trial court erred "when it admitted parol evidence to explain the meaning of a contract, absent a pleading or prior finding of ambiguity." The City then cites this court to cases on the admission of parol evidence for contract interpretation. Specifically, the City argues a party or beneficiary to a contract must first plead and prove ambiguity to allow testimony on the meaning of the contract, or the rights and responsibilities of the parties. However, those cases are simply irrelevant to case before us.

The City seems to confuse this with a contract case. The Goings were not parties to, nor beneficiaries of, the contract between Snead and the City. They were not introducing evidence to interpret ambiguous contract language in an attempt to enforce a contractual right or abrogate some contractual duty. The contract itself and evidence concerning activity on the construction site were probative evidence on the issue of whether the City retained control of the project. If the City did retain control, and failed to exercise that control using reasonable care, it would be liable. The trial court properly admitted the contract, and properly allowed testimony the concerning rights and power the City retained under it. The fifth point of error is overruled.

■ The City next contends the trial court erred by overruling its motion for judgment non obstante verdicto. The City argues that it was entitled to judgment non obstante verdicto, because the "contract between The City of Houston and Snead Site did not create a relationship that made The City of Houston an insurer against the job site hazard that caused this accident, and absent a contract provision, The City of Houston did not owe a duty of care to Charles Goings."

Once again, the City seems to be confused as to the basis of the Goings' cause of action. The Goings did not sue as beneficiaries to the contract between the City and Snead. The City's duty to Goings arises not from the contract itself, but from the common law rule that one who retains the control of any part of the work may be subject to liability for failure to use reasonable care to ensure that an independent contractor performs its work in a safe manner. *Pollard v. Missouri Pacific Railroad*, 759 S.W.2d 670, 671 (Tex.1988); *Exxon v. Quinn*, 726 S.W.2d 17, 19–20 (Tex. 1987); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417–18 (Tex.1985).

The jury found that the City had retained control over the demolition of the bridge, and that it failed to exercise that control with reasonable care. There is sufficient evidence to support those jury answers. The trial court properly denied the motion for judgment non obstante verdicto.

The City also complains the trial court erred by excluding its expert witness. The City never designated any experts. In fact, it admitted on the record that it did not even hire the expert until the trial had begun. It contends it was never presented with a proper interrogatory from the Goings, and had no duty to name its expert.

The interrogatory submitted by the Goings read: "[p]lease give the names, ages, occupation and places of residence of witnesses who will testify for Defendant in the trial of the above matter." The City answered the question by objecting that "[t]he information sought by this interrogatory is not discoverable." The City made no objection to the form of the question.

The purpose of discovery is to allow parties to obtain the fullest information, to prevent trial by ambush and to ensure fairness prevails. *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978). Acknowledging the goals of discovery, the Texas Supreme Court has held "that if a litigant propounds an improper interrogatory question, it is incumbent upon the party answering the request to object to the *form* of the question so that it may be reurged in the proper form." [Emphasis added.] *Gutier-*

*rez v. Dallas Independent School District*, 729 S.W.2d 691, 693 (Tex.1987). Where there has been no objection to the form of the question, the trial court should disallow the testimony of an unrevealed witness unless good cause is shown. *Id.* at 693.

In December of 1987, the month prior to trial, the Goings served the City with notice that they wished to depose the City's expert witnesses. The City then sought and received protection from the trial court, without disclosing it intended to call any experts at trial. In response to questions from the trial court when it attempted to call the expert, the City admitted it did not hire the expert until the trial had started. The City argued that it could not have hired the expert earlier, because it did not know it would need expert testimony until it heard the testimony of the Goings' expert. The Goings had designated testifying experts more than five months prior to trial. The City apparently chose not to depose them.

Given the record before us, we do not find the trial court abused its discretion by excluding the testimony. The City's seventh point of error is overruled.

Point of error eight asserts that the Court erred when it submitted a jury issue on negligent hiring, because hiring is a governmental function. The cases cited by the City support the contention that the hiring of *city employees* to perform *governmental functions* is a governmental function. Those cases are not dispositive of the question of whether the City is liable for selecting an incompetent contractor to perform a proprietary function.

However, we need not answer that question here. The jury's findings on the City's retention of control are themselves sufficient to support the trial court's judgment, hence any error in submission of this issue would be harmless. Point of error eight is overruled.

The City's final point of error complains the trial court erred by dismissing its cross-claim for indemnity or contribution from Snead. We do not agree.

A defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought. *Varela v. American Petrofina*, 658 S.W.2d 561, 562 (Tex.1983). Tex.Rev.Civ.Stat.Ann. art. 8306 § 3 (Vernon Supp.1990) precludes any right by Goings to a common law negligence action against Snead. Since Goings had no cause of action against Snead, the City had no claim for contribution from Snead. *Id.* at 563.

The City is not entitled to indemnity from Snead, because its contract with Snead does not satisfy the express negligence doctrine. *Ethyl Corp. v. Daniel Construction*, 725 S.W.2d 705, 708 (Tex.1987). Under the express negligence rule, a party seeking indemnity from the consequences of its own negligence must express that intent in specific terms within the four corners of the document. *Enserch Corp. v. Parker*, Tex.Supp.Ct.J. 33 (June 9, 1990).

The relevant section of the City's contract read as follow:

24. **Damages.**—The Contractor [Snead] will be held responsible for and required to make good, at his own expense all damages to persons or property caused by carelessness or neglect *on the part of the Contractor [Snead], his agents or employees.*

The Contractor [Snead] will save the City harmless from any and all liabilities whatever growing out of any injury or damage to property or persons, *because any neglect or fault of said Contractor [Snead], his agents or his employees* ...

.     .     .     .     .

40. **Contractor's Responsibility.**—The Contractor [Snead] shall assume the risk of and be responsible for any and all damages to the work, or to persons or property, *caused by or in any way resulting from the Contractor's [Snead's] negligence or the negligence of his employees* or failure to observe or comply with any City ordinance in the performance of said contract; and the Contractor and his surety will indemnify and fully save harmless the City from any loss, damage or claim on account of any such damages or injuries.

[Emphasis added.]

The contract contains no language indicating an intent that Snead indemnify the City for damages resulting from the City's own negligence. Although Snead would have been responsible for damages resulting from the negligence of its employee, the jury did not find Goings negligent.

The City was also not entitled to any sort of comparative indemnity from Snead. "Indemnitees seeking indemnity for the consequences of their own negligence which proximately causes injury jointly and concurrently with the indemnitor's negligence must also meet the express negligence test" *Ethyl*, 725 S.W.2d at 708.

The trial court correctly ruled that the contract language did not satisfy the express negligence test, and properly dismissed the City's cross-claim. The City's ninth point of error is overruled.