Herbert A. SCHAEFER, Appellant,

v.

CITY OF SAN ANTONIO By and Through Its WATER WORKS BOARD of TRUSTEES, Appellee.

No. 04-92-00077-CV.

Court of Appeals of Texas, San Antonio.

Aug. 17, 1992.

Catherine M. Stone, Law Offices of Catherine M. Stone, Allen F. Cazier, Barbour & Cazier, San Antonio, for appellant.

Elizabeth Lindell, Davidson, Troilo & Booth, P.C., San Antonio, for appellee.

Before STEPHENS[1], ASHWORTH[2], and WHITHAM[3], JJ.

## OPINION

WHITHAM, Justice (Retired).

The issues arise under the Texas Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN., § 101.021(1) (Vernon 1986). Appellant, Herbert A. Schaefer, brought this action against appellee, City of San Antonio by and through its Waterworks Board of Trustees, to recover property damage sustained when water from a broken water pipe maintained by the City Water Board flowed onto Schaefer's property. In a bench trial, the trial court entered a take-nothing judgment in favor of the City Water Board. We conclude that pursuant to the doctrine of sovereign immunity and the Act, the City Water Board enjoys government immunity and that immunity has not been waived. Accordingly, we affirm.

## FACTUAL BACKGROUND

On Sunday, July 15, 1990, as Benny T. Whitaker was leaving his home at about 9:30 a.m., he observed a water leak from a broken water pipe directly across the street from his home. Whitaker testified that the water was shooting up four to five feet into the air. Whitaker immediately returned to his home and called the City Water Board's emergency number and notified the person who answered the telephone that there was "a bad water break" at the corner of Hays and Mesquite Streets. He further informed the person who answered the telephone that the water break was serious and that "water was going everywhere." Although Whitaker was assured that repair crews would be dispatched, Whitaker testified that the water continued to shoot up from the water break throughout Sunday and Monday. As described by Whitaker, on Monday the water was still coming up knee-high out of the ground. Whitaker testified that the water shot into the air and spewed into Schaefer's yard across the street at 432 Hays Street. Whitaker did not see anyone arrive to begin repairing the water break until early Tuesday morning, July 17, 1990.

August Trub, a claims adjuster with the City Water Board, testified that the City Water Board had no record of Whitaker's call and that the first recorded reference to a complaint about the water break was on July 17, 1990. Trub testified that the water break was repaired on July 17, 1990, and the break was located approximately eleven feet from Schaefer's property line. Trub was unable to testify as to when the water line in question was last inspected prior to July 15, 1990, and, in fact, could show no record to indicate that an inspection had ever been performed between 1979 and 1990 on this area of pipe. Trub admitted that the City Water Board does not maintain any regular procedures for inspection or maintaining pipes unless there is an indication of leakage or other problems. Trub further testified that crews go to and from a repair site to repair and/or maintain broken water lines in motor vehicles. Had a crew gone to repair the break in front of Schaefer's property at the time the leak was reported on July 15, 1990, the crew would have gone in motor vehicles and would have used motor-driven equipment to repair the water leak. Trub also testified that electrical motor-driven pumps propel water through the water mains, creating a constant water pressure throughout the system. If the pump had not been working at the time of the water break,

1. The Honorable Bill J. Stephens, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. The Honorable Clyde R. Ashworth, Justice, Court of Appeals, Second District of Texas at Fort Worth, Retired, sitting by assignment.

3. The Honorable Warren Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

there would have been a leak at the location in question, but there would not have been water pressure to propel the water into the air and ultimately onto Schaefer's property.

Schaefer testified that the property located at 432 Hays Street was owned by him as rental property. Schaefer testified that when he learned of the leak and went to the property on July 17 or 18, there was an area dug up in the yard and in the street, barricades were in place, the yard was very wet, and there were areas where it was evident that a flow of water had washed across the yard and across the sidewalk. When Schaefer returned to the property several days later with a repairman, he could see a lot of water under the house. In Schaefer's opinion, the water found under the house could not have been rain water because there was too much of it. Schaefer testified that his tenant informed him that the water from the leak flowed in the direction of the house for a long period of time and that the water was even shooting up against the side of the house on the window. Shortly after the leak was repaired, mildew began growing in the house, cracks appeared in the sheetrock, and doors and windows would not open and close properly.

Anthony Espitia testified regarding the numerous repairs that he did to Schaefer's house following the water leak. Espitia testified that there was water standing under the house when he went with Schaefer to inspect the damage. During his past experiences doing various repairs at the house, Espitia had gone under the house and found the ground to be dry. After the water break in question, however, the ground underneath the house was saturated. Espitia testified that the water he saw standing under the house could not have come from rainfall and that the amount of water was significant enough to damage the foundation.

## PROCEEDINGS IN THE TRIAL COURT

At the conclusion of trial, the trial court pronounced judgment in favor of the City Water Board and stated its findings that a water leak occurred causing damage to Schaefer's property and that the City Water Board was negligent. The trial court also found that the water leak did not arise from the use of a motor vehicle or motor-driven equipment. After entry of judgment, Schaefer filed his request for findings of fact and conclusions of law with proposed findings and conclusions. In response, the City Water Board also filed proposed findings and conclusions. The trial court signed both sets of findings and conclusions. Schaefer recognizes that the oral pronouncements at the conclusion of trial are not a substitution for findings and conclusions. *See In re W.E.R.*, 669 S.W.2d 716 (Tex.1984). It is undisputed that a comparison of the court's oral pronouncements with the findings and conclusions submitted by the parties reveals no inconsistencies and that there are no inconsistencies between the two sets of findings and conclusions signed by the trial court. Therefore, pertinent to this appeal and as stated in Schaefer's brief, the trial court found that:

* A City Water Board waterline near [Schaefer's] property broke and a leak occurred.

* The City Water Board received notice of the leak on July 15, 1990, and responded to such notice on July 17, 1990.

* As a result of the water leak [Schaefer's] property was damaged in the amount of $32,000.00.

* The water in the waterlines is pressurized with the use of electric motor-driven pumps.

* The City Water Board responds to calls about broken or leaking waterlines with motor-driven equipment and motor-driven vehicles.

From these facts the trial court made the following relevant conclusions as stated in Schaefer's brief:

* The City Water Board is not liable for [Schaefer's] property damages because TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 limits governmental liability for property damage to situations in which such damage arises from the operation or use of a motor-driven vehicle or motor-driven equipment.

* [Schaefer's] property damage did not arise from the operation or use of a motor-driven vehicle or motor-driven equipment.

* [Schaefer's] property damage was proximately caused by the water leak and the City Water Board's failure to inspect and maintain the waterline and the Board's failure to timely respond to and repair the leak.

The City Water Board does not challenge the trial court's findings of fact or conclusions of law.

## THE ISSUES

On appeal, it is undisputed that the City Water Board is a governmental unit governed by the Act. It is undisputed that Schaefer's claim is for property damage only. Consequently, section 101.021(1) applies. The Act provides as follows:

A government unit in the State is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1986).

▆▆▆ Under the doctrine of sovereign immunity, the City Water Board is not liable for the torts of its agents or officers unless there is a clear constitutional or statutory waiver of immunity. Indeed, pleadings and proof of an exception to governmental immunity are required if a party seeks recovery under the Texas Tort Claims Act. *City of Houston v. Goings*, 795 S.W.2d 829, 832 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Section 101.021 of the Texas Tort Claims Act requires that the alleged negligent acts arise from the operation or use of the *motor vehicle or motor-driven equipment*. *Heyer v. North East Indep. Sch. Dist.* 730 S.W.2d 130, 131–32 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.); *Hopkins v. Spring Indep. Sch. Dist.*, 706 S.W.2d 325, 327 (Tex.App.—Houston [14th Dist.] 1986), *aff'd*, 736 S.W.2d 617 (Tex.1987).

Specifically, Schaefer tells us that his appeal:

(1) presents us with an opportunity to further define what constitutes "motor-driven equipment" under the Act, i.e., the electric motor-driven pumps propelling water through water mains; and

(2) presents the issue of whether the non-use of motor vehicles is actionable under the Act, i.e., the motor vehicles that were *not* dispatched to repair the leak on July 15; and

(3) presents the issue of whether the non-use of motor-driven equipment is actionable under the Act, i.e., the nondescriptive motor-driven equipment which would have accompanied the repair vehicles on July 15.

In this connection, Schaefer advances three points of error briefed and argued together. First, Schaefer contends that the trial court erred in concluding that Schaefer's property damage was not caused by the use of motor-driven equipment because the evidence conclusively established that the property damage was caused by water propelled by motor-driven equipment. Second, Schaefer contends that the trial court erred in concluding that Schaefer's property damage was not caused by the use of a motor vehicle or motor-driven equipment because the evidence conclusively established that the City Water Board's failure to timely respond to notice of the water leak with motor vehicles and with motor-driven equipment allowed excessive amounts of water to enter Schaefer's property and to damage the property. Third, Schaefer contends that the trial court erred in concluding that the City Water Board is immune from liability under the Act and in entering judgment for

the City Water Board because the evidence conclusively established that Schaefer's property damage was caused by the operation or use of motor-driven equipment and/or a motor-driven vehicle. In sum, Schaefer urges that the trial court erred in concluding that his property damage did not arise from the operation or use of motor-driven vehicles or motor-driven equipment. To dispose of the issues, Schaefer reminds us that the Act is to be liberally construed so as to effectuate its purposes, citing *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169, 170 (Tex.1989); *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex.1983). We decline to construe the Act as liberally as Schaefer would have us do.

### THE ELECTRIC MOTOR–DRIVEN WATER PUMPS

Schaefer's first point of error focuses on the electric motor-driven pumps propelling water through the water mains creating a constant pressure throughout the system. The term "motor-driven equipment" is not defined in the Act except to the extent that certain exclusions are enumerated. The Act specifically provides that motor-driven equipment does not include:

(A) equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state; or

(B) medical equipment, such as iron lungs, located in hospitals.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.001(3) (Vernon 1986). Very few reported cases construe this term. In *Brookshire v. Houston Indep. Sch. Dist.*, 508 S.W.2d 675, 679 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ), the Court determined that a forklift is not a motor-driven vehicle, but held that is motor-driven equipment. Similarly, in *Welch v. State Dep't of Highways & Pub. Transp.*, 780 F.2d 1268 (5th Cir. 1986), *aff'd*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), a crane was held to constitute motor-driven equipment. *Accord Kamani v. Port of Houston Auth.*, 702 F.2d 612, 614 (5th Cir.1983).

■ Schaefer concedes the reported cases deal with equipment which can transport people. Nevertheless, Schaefer maintains that in specifying exclusions, the Act refers to two particular types of motor-driven equipment which do not involve transportation. Hence, Schaefer argues that had the legislature wanted to exclude all motor-driven equipment that cannot transport individuals, it could have enacted such a broad exclusion rather than the two limited exclusions contained in § 101.001(3). Thus, Schaefer reasons that given its generally understood meaning, there is no reason why the term "motor-driven" does not include an electric motor-driven water pump. We conclude that Schaefer's expansive definition must be rejected. As noted above, pleadings and proof of an exception to governmental immunity are required if a party seeks recovery under the Act. *Goings*, 795 S.W.2d at 832. As to his pleadings, Schaefer tells us that he alleged as follows with respect to the electric motor-driven water pump:

[O]n the occasion in question certain motor driven equipment described as pumps caused pressure in the water lines owned and operated by the [City Water Board], and that when the main water line broke, the pressure caused the water to gush up into the air and onto [Schaefer's] property and under the foundation of his home, thereby causing damage and destruction to the home.

However, under the proof, these allegations relate to the doing or performing of something to propel water through the water mains creating a constant water pressure throughout the system. Thus, the pleading and proof relate to matters involving the practical application of the principles or processes of directing and controlling water distribution to the City of San Antonio, not to the practical application of principles or processes of using or operating motor-driven equipment. *See Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 809 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). (Jackson collided with Snyder's stalled vehicle. Jackson contended that the police removal of their police vehicle from its stopped position behind Snyder's car, under the circumstances alleged, constituted negligent operation and use of a motor vehicle within the meaning

of the Act. Held not to be negligence arising from the operation or use of a motor vehicle within the meaning of the Act. *Jackson,* 484 S.W.2d at 810 (opinion on motion for rehearing)). We conclude, therefore, that controlling water pressure by use of the electric motor-driven water pumps is not operating or using motor-driven equipment within the meaning of the Act any more than is directing or controlling traffic by "operation and use" of the police car in *Jackson.* We reach this conclusion because in the present case, as in *Jackson,* the allegations of negligence relate to the doing or performing of something involving the practical application of the principles or processes of directing and controlling (water pressure) (traffic); not to the practical application of principles or processes of operating or using (motor-driven equipment) (a motor vehicle). *See Jackson,* 484 S.W.2d at 809.

■ Moreover, we do not read in the Act a legislative intent to impose such far-reaching liability exposure on governmental entities as Schaefer would have us do. Indeed, only when the legislature has clearly and explicitly waived the State's sovereign immunity may a cause of action accrue. *Mount Pleasant Indep. Sch. Dist. v. Lindburg,* 766 S.W.2d 208, 211 (Tex.1989). Because the status of stationary electric motor-driven pumps as "motor-driven equipment" is questionable at best, we conclude that the City Water Board's sovereign immunity has not been clearly and explicitly waived. Therefore, we conclude that the water pump in question is not "motor-driven equipment" for purposes of the Act. It follows that the trial court acted properly in concluding that Schaefer's property damage was not caused by the use of the water pumps propelling water through the water mains. We overrule Schaefer's first point of error.

## THE NONUSE OF MOTOR–DRIVEN VEHICLES AND MOTOR–DRIVEN EQUIPMENT

■ Schaefer's second point of error focuses on the nonuse of motor vehicles and accompanying motor-driven equipment employed by the City Water Board in the repair of water leaks in its water pipes.

Our Supreme Court tells us that "operation" refers to a doing or performing of a practical work and "use" means to put or bring into action or service; to employ for or apply to a given purpose. *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51–52 (Tex.1992) (citing and quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989)). In the present case, we conclude that the motor-driven vehicles and accompanying unidentified motor-driven equipment were not doing or performing a practical work under Schaefer's scenario, nor were they put or brought into action or service, or employed for or applied to a given purpose. Consequently, we conclude further that the motor-driven vehicles and accompanying unidentified motor-driven equipment were not in operation or use for purposes of the Act. We reach this conclusion for the following reasons. First, the absence of the required nexus between negligence of a governmental employee and the operation or use of a motor-driven vehicle and the motor-driven equipment. Second, the motor-driven vehicle and motor-driven equipment in question were not at the location where the leak in the pipe occurred. Third, waiver of governmental immunity does not occur where use of a motor-driven vehicle is refused.

As to the first reason, we conclude that "non-operation" or "non-use" cannot be made into "operation or use" to establish liability because the record contains no evidence of a wrongful act, omission or negligence by a City Water Board employee concerning its repair vehicles and equipment. We know that this nexus is now required from the Supreme Court's decision in *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49 (Tex.1992). The phrase "arises from" as used in the Act requires a nexus between the property damage negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment. *See LeLeaux,* 835 S.W.2d at 50–51. Indeed, the Supreme Court explains that the nexus requirement of the employee is consistent with the clear intent of the Act that the waiver of sovereign immunity be

limited. *Id.* For this reason, we conclude that a failure to respond is not the "operation or use" of the motor-driven vehicles or motor-driven equipment in question as a matter of law.

Second, we consider the fact that the motor-driven vehicles and motor-driven equipment were not at the location where the leak in the pipe occurred. In *Lindburg,* the school bus from which a child had exited was approximately one-quarter of a mile distant from the site of the accident in which the child was killed. The evidence did not show that as a matter of law the child's death was caused by the operation or use of a motor-driven vehicle. *Lindburg,* 766 S.W.2d at 212. Thus, the accident in no way resulted from or was proximately caused by the use or operation of the school bus. *Lindburg,* 766 S.W.2d at 215 (Hightower, J., concurring). Hence, in *Lindburg,* government's vehicle had departed the scene. In the case of two children sustaining injuries at a school bus stop, government's vehicle had not yet arrived upon the scene. *See Luna v. Harlingen Consol Indep. Sch. Dist.,* 821 S.W.2d 442 (Tex.App.—Corpus Christi 1991, writ denied). In *Luna,* the two children were waiting at a school bus stop to be picked up by a school bus, when they were struck by a motor vehicle then being driven by a third person. *Luna,* 821 S.W.2d at 443. In *Luna,* the plaintiffs failed to meet their burden to show that the damages were proximately caused by the negligence or wrongful act or omission of an officer or employee of the school district acting within the scope of his authority, arising from the operation of a motor vehicle. *See Luna,* 821 S.W.2d at 445. In *Lindburg* and *Luna,* school district motor-driven vehicles were not present at the location where death or personal injury occurred at the hands of third parties. In the present case, the City Water Board's motor-driven vehicles and nondescriptive motor-driven equipment were not timely present at the location where the leak in the pipe occurred. In the present case, we conclude that the City Water Board's failure to respond to notice of the water leak by dispatching repair vehicles and equipment on July 15, does not constitute use or operation of a motor-driven vehicle or motor-driven equipment for purposes of the Act.

Third, even if the motor-driven vehicles and motor-driven equipment in question had been timely dispatched to the location where the leak in the pipe occurred on July 15, a failure to utilize the motor-driven vehicles and the motor-driven equipment accompanying the repair motor-driven vehicles would not constitute "operation or use" within the meaning of the Act. Hence, waiver could not be invoked. *See Brantley v. City of Dallas,* 545 S.W.2d 284, 286, 287 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). There, Brantley requested emergency City Fire Department ambulance service. After examining Brantley, the firemen refused to transport Brantley to the hospital in the City's ambulance. Hence, Brantley contended that his injuries arose from negligence of the City's employees arising from the use and operation of a motor vehicle. *Brantley,* 545 S.W.2d at 285. Not so. The *Brantley* court determined that taking the words "use" and "operation" in their common and ordinary meaning, an allegation that injuries resulted because a technician refused to transport Brantley in an ambulance, is not equivalent to an allegation that Brantley's injuries were proximately caused by negligence arising from the use or operation of a motor vehicle. *Brantley,* 545 S.W.2d at 286, 287. *Accord Hopkins v. Spring Indep. Sch. Dist.,* 706 S.W.2d 325, 327 (Tex. App.—Houston [14th Dist.] 1986), *aff'd,* 736 S.W.2d 617 (Tex.1987). (Failure to transport student previously injured at school to a medical facility during her school bus transportation from school to the after-school day care center which was her usual destination. Held that students' injury not the kind contemplated by the legislature as one which arose from the use of a motor vehicle. *Hopkins,* 706 S.W.2d at 326–27.) Thus, we conclude that the ordinary and common meaning of "operation or use" does not include a failure to operate or use a motor-driven vehicle or motor-driven equipment within the meaning of the Act.

It follows that the trial court acted properly in concluding that Schaefer's property

damage was not caused by operation or use of a motor-driven vehicle or motor-driven equipment. We overrule Schaefer's second point of error.

In light of our disposition of Schaefer's first and second points of error, it follows and we so hold, that governmental immunity on the occurrence in question has not been waived or abolished by and under the Act and that the City Water Board is immune from liability in this case. Thus, the trial court did not err in concluding that the City Water Board is immune from liability. We overrule Schaefer's third point of error.

### THE "EMPLOYEE" QUESTION

We have disposed of the present case on the basis that Schaefer's property damage did not arise from the operation or use of motor-driven vehicles or motor-driven equipment within the meaning of the Act and, therefore, that governmental immunity has not been waived or abolished by and under the Act. In light of our disposition of this appeal, it is unnecessary to address the question raised by the City Water Board of whether Schaefer's property damages were shown to have been "proximately caused by the wrongful act or omission or negligence of *an employee* acting within the scope of employment." TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1986) (emphasis added). In this connection, we note that the record is silent as to the name, identity, or conduct of any specific *employee* of the City Water Board alleged to have committed any wrongful act, omission, or negligence. We also note that the record is silent as to the City Water Board's procedure and operations as to waterline repair by operation and use of motor-driven vehicles and motor-driven equipment and as to maintenance of water pressure by operation and use of motor-driven equipment in the form of electric motor-driven pumps. Regardless, however, Schaefer insists that it was "City Water Board *employees* who failed to respond or attempt repairs for nearly forty-eight hours" (emphasis ours). Further, Schaefer points out that "the trial court found that the City Water Board received notice of the leak on July 15, 1990, but did not respond to such notice until July 17, 1990." Finally,

Schaefer calls our attention to the trial court's conclusions of law that "Schaefer's damages were proximately caused by the City Water Board's failure to inspect and maintain the waterline and the Board's failure to timely respond to and repair the leak." Based on these assertions, Schaefer argues that these unchallenged findings and conclusions are based upon the evidence and reflect the omissions and negligence of the City Water Board's employees. Thus, Schaefer maintains that he met his burden of establishing the omission or negligence of the City Water Board's employees acting within the scope of their employment. Nevertheless, an answer to the referenced question not being necessary to our disposition of this appeal, we do not reach the question and express no opinion on the question of whether Schaefer's property damages were shown to have been "proximately caused by the wrongful act or omission or negligence of *an employee* acting within the scope of employment." § 101.021(1) (emphasis added).

Affirmed.