**GALVESTON RACQUET CLUB, INC., Appellant,**

v.

**CITY OF GALVESTON, Appellee.**

No. 01–03–00901–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 7, 2005.

J. Michael Fieglein, Law Office of J. Michael Fieglein, Galveston, TX, for Appellant.

George W. Vie, III, Mills Shirley, L.L.P., Galveston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and ALCALA.

## OPINION

ELSA ALCALA, Justice.

In this appeal, Galveston Racquet Club, Inc. (the Club), contends that the trial court erred by granting a plea to the jurisdiction in favor of appellee, the City of

Galveston (the City). The Club asserts that the City's governmental immunity from suit was waived under the Tort Claims Act because the property damage it sustained arose "from the operation or use of ... motor-driven equipment." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021(1)(A); 101.0215(a)(11), (32); 101.025 (Vernon 2005). The parties do not dispute that the water pumps may constitute motor-driven equipment under the Tort Claims Act. *See Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex.2001). Their disagreement concerns the narrow question whether the pleadings demonstrate that the damage arose "from the operation or use of ... motor-driven equipment," i.e. whether there is a nexus between the operation or use of the water pump and the alleged damage to the Club's property caused by water that leaked through the broken water pipes. We affirm the trial court's order granting the City's plea to the jurisdiction.[1]

1. The trial court also granted the City's motion for summary judgment that was filed as an alternative to the jurisdictional plea. In its second issue on appeal, the Club contends that the trial court erred by granting the motion for summary judgment. Because we hold that the trial court properly granted the City's plea to the jurisdiction, we need not address whether the trial court erred by rendering summary judgment.

2. The parties disputed whether the waters lines should have been in use when they burst. According to an affidavit from the Club's general manager included in the Club's responsive motion to the plea to the jurisdiction, he was told by the foreman of the crew sent by the City to stop the leak that the damage to the property was caused because a water line that ran underneath the Club's property was pressurized when it should not have been pressurized because it was an "antique" and should not have been in use. The City, however, in its plea to the jurisdiction, provided two affidavits, one from the Director

## Factual and Procedural Background

The Club's First Amended Original Petition alleged that in August 2001, the ground beneath its tennis courts and parking lot caved in due to water that leaked from "deteriorated," "unmaintained," and "worn out" water lines that ran beneath its property. The petition asserted that these water lines leaked because the City used motor-driven pumps to pressurize water into these water lines, and "subject[ed the lines] to substantial, continuous, pump-driven water flow."[2] In its plea to the jurisdiction, the City asserted that the Club failed to demonstrate a nexus between the use or operation of the water pumps and the cavitation of the ground that caused the property damage. The City contends that the water pumps did no more than furnish the condition that made the alleged property damage possible.[3]

## Waiver of Governmental Immunity

▮▮▮▮ In a suit against a governmental unit, the plaintiff must affirmatively dem-

of Public Works and one from the Utility Manager of the City Water Department, stating that the water line that ran underneath the Club's property was neither abandoned, nor unpressurized and then pressurized. The City's affidavits stated that the water line had been pressurized for years, and that the leak was not caused by a pump that caused the line to be pressurized inappropriately, but rather, that the leak was a result of a defect in the line that occurred spontaneously without regard to any employee negligence.

3. The Club has limited its appeal to an assertion that the Tort Claims Act has waived its immunity from suit for damages caused "from the operation or use of ... motor-driven equipment." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(1)(A); 101.0215(a)(11), (32); 101.025 (Vernon 2005). Accordingly, the Club has waived any complaints concerning the trial court's grant of the plea to the jurisdiction concerning any complaint that the city was negligent "in maintaining water and sewer lines." *See* TEX.R.APP. P. 38.1.

onstrate the court's subject-matter jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). To determine whether the plaintiff has met that burden, we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties. *Id.*(quoting *White*, 46 S.W.3d at 868). "[I]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). Because immunity from suit defeats a trial court's subject-matter jurisdiction, immunity from suit may properly be asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004).

We review a trial court's ruling on a jurisdictional plea de novo, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. *Id.* at 226; *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). Whether the pleader has alleged facts that affirmatively demonstrate subject-matter jurisdiction is a legal question that we review de novo. *Miranda*, 133 S.W.3d at 226.

Because waterworks, and water and sewer services are governmental functions, the City, a governmental unit, is generally immune from liability for the Club's damages unless that immunity has been waived by the Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021; 101.021(1)(A); 101.0215(a)(11), (32); 101.025 (Vernon 2005). The Tort Claims Act provides, as follows:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

For the government's waiver of immunity from liability under the Act to apply, the supreme court has consistently required a nexus between the operation or use of the motor-driven equipment and a plaintiff's injuries. *Whitley*, 104 S.W.3d at 543; *White*, 46 S.W.3d at 869; *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992). This nexus requires more than mere involvement of property. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998). Rather, "the equipment's use must have actually caused the injury." *White*, 46 S.W.3d at 869. Thus, the operation or use of motor-driven equipment "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Bossley*, 968 S.W.2d at 343.

The Club contends that the property damage was caused by the cavitation of ground underneath the Club's property due to water that leaked from "deteriorated," "unmaintained," and "worn out" water lines. Although the use or operation of

the water pump caused substantial water to flow into the water line and caused the water to pressurize, the alleged damage to the Club's property was a result of the cavitation of the ground. The damage was caused by the condition created by the water pump—the pressurized, substantial water flow into "deteriorated," "unmaintained," and "worn out" water lines—rather than the actual use or operation of the water pump, as required for the waiver of governmental immunity under the Tort Claims Act. *See Bossley*, 968 S.W.2d at 343 (stating that operation or use of motor-driven equipment "does not cause injury if it does no more than furnish the condition that makes the injury possible."); *Ector County v. Breedlove*, 2004 WL 2549146 (Tex.App.-Eastland, Nov.4, 2004, no pet.)

(holding that operation and use of motor driven equipment to perform road and ditch work that increased grade near home and that installed culverts to other properties so that water would not drain away from Breedlove home did not constitute use of motor-driven equipment under the Tort Claims Act because motor-driven equipment only created condition that made flooding possible).[4] We conclude that the Club's claim does not fall within the exception to immunity set forth in section 101.021(1)(A).

We hold that the Club's claim that the City negligently operated the water pump does not give rise to a claim for damages arising from the operation or use of motor-driven equipment. We further hold that the City's immunity is not waived by the

---

**4.** *See also Schaefer v. City of San Antonio*, 838 S.W.2d 688, 691–93 (Tex.App.-San Antonio 1992, no writ), *rev'd on other grounds by Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex.2001). The *Schaefer* court made two holdings: (1) the city was not "operating" or "using" the water pump and (2) the pump was not "motor-driven equipment." *White*, 46 S.W.3d at 868. In *White*, the supreme court disapproved of *Schaefer's* second holding, that the motor-driven pump was not "motor-driven equipment." *Schaefer*, however, also held that "controlling water pressure by use of the electric motor-driven water pumps is not operating or using motor-driven equipment within the meaning of the Act any more than is directing or controlling traffic by 'operation and use' of the police car in *Jackson*." *Schaefer*, 838 S.W.2d at 693 (referring to *Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 809–10 (Tex.Civ. App.-Corpus Christi 1972, writ ref'd n.r.e.)) (opinion on motion for rehearing). *Jackson* involved a collision between Jackson's vehicle and Snyder's stalled vehicle. *Jackson*, 484 S.W.2d at 809–10. Jackson contended that police removal of their vehicle from its stopped position behind Snyder's car, under the circumstances alleged, constituted negligent operation and use of a motor vehicle within the meaning of the Act. *Id.* The *Jackson* court held, however, that this did not constitute negligence arising from the opera-

tion or use of a motor vehicle within the meaning of the Act. *Id.* Schaefer's pleadings, which are similar to the Club's pleadings here, alleged the following with respect to the electric motor-driven water pump:

> [O]n the occasion in question certain motor driven equipment described as pumps caused pressure in the water lines owned and operated by the [City Water Board], and that when the main water line broke, the pressure caused the water to gush up into the air and onto [Schaefer's] property and under the foundation of his home, thereby causing damage and destruction to the home.

*Schaefer*, 838 S.W.2d at 692. The *Schaefer* court went on to state:

> [T]hese allegations relate to the doing or performing of something to propel water through the water mains creating a constant water pressure throughout the system. Thus, the pleading and proof relate to matters involving the practical application of the principles or processes of directing and controlling water distribution to the City of San Antonio, not to the practical application of principles or processes of using or operating motor-driven equipment.

*Id.* (citing *Jackson*, 484 S.W.2d at 809–10). Here, as in *Schaefer*, the property damage was not the result of the actual use of the motor driven equipment itself. *See id.*

Tort Claims Act, and that the trial court did not err by granting the City's plea to the jurisdiction. We overrule the Club's first issue.

## Conclusion

We affirm the judgment of the trial court.