

## NUMBER 13-19-00556-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

CITY OF BROWNSVILLE, TEXAS,                                                     Appellant,

v.

WESLEY RATTRAY, MARCO NUNEZ,
MARTHA SAAVEDRA, ANTONIO VINDELL,
CARMEN PASHOS, STEVE TULLOS,
CESARIO PEDRAZA AND MINERVA PEDRAZA,
ROGER LULY, NORA GONZALEZ,
AND ROSALINDA CASTILLO,                                                         Appellees.

On appeal from the 107th District Court
of Cameron County, Texas.

## DISSENTING MEMORANDUM OPINION

**Before Justices Hinojosa, Perkes, and Tijerina**
**Dissenting Memorandum Opinion by Justice Hinojosa**

I believe that the homeowners met their evidentiary burden to create a fact issue

concerning the application of the TTCA's waiver of immunity.[1] Therefore, I would affirm the trial court's denial of the City's plea to the jurisdiction. Because the majority holds otherwise, I respectfully dissent.

## I. STANDARD OF REVIEW

The majority correctly sets out the standard of review and applicable law. However, I believe the majority fails to view the homeowners' pleadings and evidentiary record in the proper light. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause, construing the pleadings liberally in favor of the plaintiffs. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In the face of an evidentiary challenge, the plaintiff has the burden to present sufficient evidence to create a genuine issue of material fact regarding the jurisdictional issue. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). Here, in determining whether the homeowners have met their burden, we must view the evidence in the light most favorable to the homeowners, indulging every reasonable inference in their favor and resolving any doubts in their favor. *See Miranda*, 133 S.W.3d at 228.

## II. TTCA WAIVER OF IMMUNITY

### A. "Use" of Motor-Driven Equipment

As the majority acknowledges, the applicable waiver of immunity found in the TTCA requires, in part, that the claimed damages stem from the "operation" or "use" of motor-driven equipment. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). The term

---

[1] I will refer to the parties as they are designated in the majority opinion.

2

"operation," as it is used in the TTCA, refers to "a doing or performing of a practical work." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist*., 835 S.W.2d 49, 51 (Tex. 1992). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id*. The non-use of property cannot support a claim under the TTCA. *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001).

I agree with the majority that many of the homeowners' contentions relate to the non-use of motor-driven equipment, which do not invoke the TTCA's waiver of immunity. However, I believe that the homeowners' complaint regarding the closing of the North Laredo Gate and their evidence supporting that complaint sufficiently invoke the statutory waiver. The homeowners alleged the following "use" of the gate in their live pleading:

> Plaintiffs allege that the City of Brownsville and its employee, Jose Figueroa, knew or should have known upon closing the "North Laredo Gate" that any negative water flow at the "North Laredo Gate" was of a temporary nature since there was positive water flow downstream at the "South Laredo Gate". Closing the "North Laredo Gate" did, in fact, cause excess stormwater to accumulate in the Resaca de La Guerra and flood the Plaintiffs homes.

In response to the City's evidentiary challenge, the homeowners presented evidence that the sluice gates, including the North Laredo Gate, are equipped with motor-driven actuators that open and close the gates and that the gate could not have been opened by its manual override wheel because it was not attached to the gate on the day of the storm.

The majority acknowledges that the evidentiary record creates a fact issue concerning the manner in which the gate was opened. However, the majority performs two instances of sleight of hand to obscure this "use" claim: First, rather than viewing the

3

evidence in the light most favorable to the homeowners and limiting its review to the live pleadings, the majority quotes allegations from earlier pleadings while focusing solely on evidence unfavorable to the homeowners. This allows the majority to conclude that "the gravamen of [the homeowners'] complaint is based on the City's nonuse of the North Laredo Gate."

Second, the majority lumps together the homeowners' "use" allegation with a laundry list of non-use complaints before ultimately concluding that the pleadings "merely identify the use of equipment during the rainstorm when the nature of the claim is based on the City's failure to relieve the overflow of water, not opening the gate, and the City's nonuse of various pumps or gates." By conflating the non-use and use complaints, the majority obscures the true nature of the homeowners' allegations concerning the North Laredo Gate.

I believe the homeowners' allegation that the North Laredo Gate was closed by use of its motor-driven actuator in response to the torrential rains on the day in question—as opposed to being in the closed position at the inception of the storm—is a complaint regarding the "use" of motor-driven equipment. This allegation is not an artful attempt to recast a claim for which there is no waiver of immunity, as the majority concludes. *See City of North Richland Hills v. Friend*, 370 S.W.3d 369, 373 (Tex. 2012). Rather, the complaint clearly and directly identifies a "use" of motor-driven equipment. In reaching a contrary conclusion, the majority fails to liberally construe the pleadings, while improperly viewing the evidence in the light most favorable to the City. *See Miranda*, 133 S.W.3d at 226, 228.

4

**B.     "Arises From"**

The "arises from" standard requires a "nexus between the operation or use of the motor-driven . . . equipment and a plaintiff's injuries." *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015). The operation or use of motor-driven equipment "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). In determining whether such a nexus exists, we look to several attenuation factors: "When an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." *Ryder*, 453 S.W.3d at 929–30 (quoting *City of Dallas v. Hillis*, 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied)). The required nexus is something more than actual cause but less than proximate cause. *Id*. at 928–29.

With respect to the "arises from" element, the homeowners presented the following evidence to establish that the flooding of their homes would not have occurred but for the closing of the North Laredo Gate: (1) the presence of positive water flow downstream from the gate during the relevant time period indicating that negative water flow near the subdivision was temporary in nature; (2) the fact that water in the Resaca near the subdivision drains downstream through the opened gate; (3) the statement of the City's Public Works Director that stormwater accumulating near the subdivision would have no place to go while the gate was closed; and (4) expert opinion testimony that closing the gate "caused the accumulation of water" near the subdivision. Viewing this evidence in

5

the light most favorable to the homeowners, I would conclude that there exists a fact issue as to whether the flooding of the homeowners' property arose from the closing of the North Laredo Gate. *See id*. at 929.

In reaching a contrary conclusion, the majority creates a new causation standard from whole cloth: "Simply put, the mere act of closing a gate does not cause flooding—if no rainstorm had occurred on August 31, 2015, and the City closed the North Laredo Gate, the homeowners would not have suffered property damage." This statement elevates the homeowners' causation burden from "something more than actual cause but less than proximate cause" to sole factor causation. *See id*. However, "[i]t has long been the law in this state that a defendant's act or omission need not be the sole cause of an injury, as long as it is a substantial factor in bringing about the injury." *Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017). Further, "there may be more than one proximate cause of an injury." *Id*. The causation requirement in § 101.021(2) is less than proximate cause—"not a heightened standard such as sole cause." *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 808 (Tex. App.—Fort Worth 2008, no pet.).

With this improper causation standard in hand, the majority asserts: "it is undisputed that the gate itself did not cause the injury as plaintiffs allege that the gate caused the accumulation of water." Under this calculus, it is difficult to envision any circumstance under which water diverted by the use of motor-driven equipment would invoke a waiver of immunity under the TTCA—if not for the presence of water, no property would ever suffer water damage. However, I am unaware of any Texas authority supporting such a narrow construction of the nexus requirement. The majority states that

6

it must reach this result based on a strict construction of § 101.021's "arises from" requirement. However, the Texas Supreme Court has already construed this provision for us, providing clear guidance as to the meaning of the nexus requirement. It is our role as an intermediate court to apply the statute as construed by the supreme court—not to rewrite the causation standard as we see fit.

In applying the nexus requirement as articulated by the higher court, Texas intermediate appellate courts have acknowledged that water damage resulting from the use of motor driven equipment can invoke the TTCA's waiver of immunity. For instance, in *Galveston Racquet Club, Inc. v. City of Galveston*, the court reviewed whether the plaintiff's pleadings demonstrated a nexus between the operation or use of a water pump and the alleged damage to the plaintiff's property caused by water leaking through broken pipes. 178 S.W.3d 167, 171 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The court did not reject outright that the use of water pumps could provide the required nexus. Rather, the court observed that the water damage was allegedly caused by the condition created by the water pump—the pressurized, substantial water flow into "deteriorated," "unmaintained," and "worn out" water lines—rather than the actual use or operation of the water pump. *Id*. As it pertains to this case, it is notable that the *Galveston* court did not employ the majority's reasoning—that if there was no water in the pipes, the plaintiff would not have suffered water damage. *See id*.; *see also Running v. City of Athens*, No. 12-18-00047-CV, 2019 WL 625972, at *4 (Tex. App.—Tyler Feb. 14, 2019, no pet.) (mem. op.) (concluding there was no nexus in water damage case because "[t]he defective non-motorized mechanical valve was the actual cause of any overflow, not the motor-driven

7

high service pumps, which is insufficient to establish a waiver under the TTCA").

*San Antonio Water System v. Overby* provides further illustration of when the use of motor-driven equipment merely furnishes the condition that made the effect possible. 429 S.W.3d 716, 722 (Tex. App.—San Antonio 2014, no pet.). In that case, the plaintiffs produced evidence that the governmental entity used motor-driven equipment to maintain an alley and that the alley collected rainwater which sometimes flooded the plaintiffs' yard with rainwater and sewage. *Id*. The court concluded that this evidence conclusively proved that it was not the governmental entity's use of the equipment that damaged the plaintiffs' property. *Id*. Rather, it was the condition of the alley that led to the damage, and a use of motor-driven equipment that results in a condition that causes an injury is not a sufficient nexus to invoke the statutory waiver of immunity. *Id*.

In contrast to *Galveston Racquet Club* and *Overby*, the evidentiary record in this case does not establish that the closing of the North Laredo Gate created a separate condition that led to the flooding of the homeowners' property. Rather, viewing the evidentiary record in the proper light, it was the very act of closing the North Laredo Gate that caused such flooding. There exists no geographic, temporal, or causal attenuation between the closing of the gate and the flooding of the subdivision that would support a contrary conclusion. *See Ryder*, 453 S.W.3d at 929–30; *cf. Dorbandt v. Cameron Cty.*, No. 13-11-00337-CV, 2012 WL 1390576, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 19, 2012, no pet.) (mem. op.) (holding that the plaintiffs failed to show a causal nexus between the County's alleged act of negligently using motor-driven equipment and their purported injuries, where the County's motor-driven equipment was removed from the

8

area two years before any flooding occurred, and the equipment was not present during any of the heavy rainfall events in 2007 and 2008).

Finally, I take issue with the majority's conclusion that the homeowners' bare allegations relating to the causal nexus are insufficient to survive a plea to the jurisdiction. This conclusion ignores the uncontroverted and unchallenged expert opinion testimony presented by the homeowners. An allegation supported by evidence is not a bare allegation, and the City has not provided any argument to this Court to justify ignoring this evidence.[2]

### III.  CONCLUSION

The homeowners allege that their properties suffered water damage due to the City's decision to close the North Laredo Gate by use of its motor-driven actuator in response to torrential rains. When met with an evidentiary challenge, the homeowners presented evidence creating a fact issue regarding this claim. "At this stage of the proceedings, no more is required" to survive a jurisdictional challenge. *PHI, Inc. v. Tex. Juvenile Justice Dep't*, 593 S.W.3d 296, 303 (Tex. 2019). In reversing the trial court's denial of the City's plea to the jurisdiction, the majority fails to liberally construe the homeowners' allegations and ignores evidence favorable to those allegations. In so doing, the majority deprives the homeowners of their right to have disputed facts resolved by a jury. For the foregoing reasons, I respectfully dissent.

---

[2] For instance, the City does not argue on appeal that the expert's opinion testimony constitutes no-evidence because it is bare or baseless. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) ("Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence.").

LETICIA HINOJOSA
Justice

Delivered and filed the
15th day of October, 2020.