ACCEPTED
04-15-00297-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/23/2015 2:50:44 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00297-CV

IN THE COURT OF APPEALS FOR THE FOURTH DISTRICT
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/23/2015 2:50:44 PM
KEITH E. HOTTLE
Clerk

## HETUL BHAKTA D/B/A BUDGET INN,
Appellant,

## V.

## TEXAS DEPARTMENT OF TRANSPORTATION,
Appellee.

On Appeal from the 79th Judicial District Court of Brooks County, Texas;
Cause No. 11-04-15888-CV; Honorable Richard C. Terrell

## BRIEF OF APPELLEE
## THE TEXAS DEPARTMENT OF TRANSPORTATION

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

CHARLES E. ROY
FIRST ASSISTANT ATTORNEY GENERAL
ATTORNEY GENERAL

JAMES E. DAVIS
DEPUTY ATTORNEY GENERAL
FOR CIVIL LITIGATION

RANDALL K. HILL
ASSISTANT ATTORNEY GENERAL
CHIEF, TRANSPORTATION DIVISION

JOHN SETH JOHNSON
State Bar No. 24083259
Assistant Attorney General
P. O. Box 12548
Austin, Texas  78711-2548
Telephone: (512) 463-2004
Facsimile: (512) 472-3855
john.johnson@texasattorney
general.gov

ATTORNEYS FOR APPELLEE
THE TEXAS DEPARTMENT OF TRANSPORTATION

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant/Plaintiff:**                         Hetul Bhakta d/b/a Budget Inn

**Trial and Appellate Counsel
for Appellant:**                                 Aloysius Peter Thaddeus, Jr.
                                                 State Bar No. 19819500
                                                 Vicente Gonzalez
                                                 State Bar No. 00798215
                                                 V. GONZALEZ & ASSOCIATES, P.C.
                                                 121 North 1th Street
                                                 McAllen, Texas 78501


**Appellee/Defendant:**                          The Texas Department of Transportation

**Trial and Appellate Counsel
for Appellee:**                                  *Current Appellate Counsel*:
                                                 John Seth Johnson
                                                 State Bar No: 24083259
                                                 Susan Desmarais Bonnen
                                                 State Bar No: 05776725

                                                 *Past Trial and Appellate Counsel*:
                                                 Betsy Johnson
                                                 (Former Assistant Attorney General)
                                                 State Bar No: 24048253
                                                 Michael Ritter
                                                 (Former Assistant Attorney General)
                                                 State Bar No: 24074960

                                                 OFFICE OF THE ATTORNEY GENERAL
                                                 TRANSPORTATION DIVISION
                                                 P.O. Box. 12548
                                                 Austin, Texas 78711

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL………………..……...…………….ii

INDEX OF AUTHORITIES…………………………...……………………….…………v

STATEMENT OF THE CASE…………………..…………………………...…….ix

ISSUE PRESENTED………….........................................................................x

STATEMENT OF FACTS…………....................................................................1

   I.  Factual background………………………………………………..1

   II.  Relevant procedural history…………..…………………………..3

SUMMARY OF ARGUMENT………………………………………………......…4

ARGUMENT…………………………………………………………………….6

   I.  Scope and standard of review…………………………………………..6

      A. Sovereign immunity…………………………….……………………6

      B. TxDOT's Plea to the Jurisdiction……………….………………….6

      C. Additional jurisdiction challenges……………………………..…8

      D. Bhakta's claims were properly dismissed………………………….9

   II.  Bhakta's inverse condemnation claim was properly dismissed……..……9

      A. TxDOT did not have the requisite intent to support a valid takings claim……………………………………………………………10

      B. The jurisdictional evidence does not contain a fact issue regarding TxDOT's intent..................................................................15

C. Any alleged recurrence of flooding is not probative of TxDOT's intent………………………………………………………………….…..17

    1. *Gragg's* recurrence requirement………..………………….…….17

    2. *Kopplow* and *Gragg* are factually distinguishable……….…..……18

    3. Bhakta cannot impute intent to TxDOT through recurrence...……20

D. Bhakta's allegations against TxDOT additionally fail the public use requirement necessary for a valid takings claim……………….…..21

E. TxDOT's alleged actions did not cause Bhakta's property damage…………………………………………………………...22

F. The jurisdictional defects in Bhakta's claims are incurable by further amendment……………….……………………………………….23

III. Bhakta cannot establish a valid waiver of immunity under the Texas Tort Claims Act………………………………………..………………….……25

    A. TxDOT did not operate the alleged motorized equipment………..26

    B. Bhakta cannot satisfy Section 101.021's causal nexus requirement………………………………………………………30

IV. Bhakta cannot assert his nuisance claim in the absence of a valid waiver of immunity...................................................................................................33

PRAYER…………………………………………...…………………………..34

CERTIFICATE OF COMPLIANCE…………………………………………...35

CERTIFICATE OF SERVICE……………………………...………………….35

# INDEX OF AUTHORITIES

**Cases**

**Page**

*Ahart v. Tex. Dep't of Transp.,* No. 14-05-00027-CV, 2006 WL 2167223
(Tex. App.—Houston [14th Dist.] Aug. 1, 2006, pet. denied) (mem. op.)…...15, 16

*AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191
(Tex. App.—Dallas 2010, no pet.)…………………………………………...21, 24

*Bell v. City of Dall.*, 146 S.W.3d 819 (Tex. App. - Dallas 2004, no pet.)…….10, 25

*Bhakta v. Tex. Dep't of Transp*., No. 04-14-00063-CV, 2014 WL 1499810
(Tex. App.—San Antonio Apr. 16, 2014, no pet.) (mem. op.) (per curiam)…......v, 3

*Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547 (Tex. 2000)……………..……..8

*City of Dall. v. Blanton*, 200 S.W.3d 266 (Tex. App.—Dallas 2006, no pet.)…....23

*Cenizo Corp. v. City of Donna*, No. 13-12-00308-CV, 2013 WL 1800270
(Tex. App.—Corpus Christi Apr. 25, 2013, no pet.)…………………..……...22, 23

*Harris County Flood Control Dist. v. Kerr*, 13-0303,
2015 WL 3641517 (Tex. June 12, 2015)……………………………….…….……..14

*Church v. City of Alvin*, No. 01-13-00865-CV, 2015 WL 3916708
(Tex. App.—Houston [1st Dist.] June 25, 2015, no. pet. h.) (mem. op.)…...3, 14, 29

*City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165 (Tex. 2004)…………....11

*City of Borger v. Garcia*, 290 S.W.3d 325
(Tex. App.—Amarillo 2009, pet. denied)……………………….…………….22, 25

*City of Dall. v. Hillis,* 308 S.W.3d 526 (Tex. App.—Dallas 2010, pet. denied)…31

*City of Dall. v. Jennings*, 142 S.W.3d 310 (Tex. 2004).................................passim

*City of El Paso v. Ramirez*, 349 S.W.3d 181
(Tex. App.—El Paso 2011, no pet.)……………………………………………….24

*City of Hous. v. Ranjel*, 407 S.W.3d 880
(Tex. App.—Houston [14th Dist.] 2013, no pet.)……...…..…………….……27, 28, 29

*City of Keller v. Hall*, 433 S.W.3d 708
(Tex. App.—Fort Worth 2014, pet. denied)…………...…………….……25

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)…………………...…..…11, 21

*City of Leon Valley v. Wm. Rancher Estates Joint Venture*, No. 04-14-00542-CV, 2015 WL 2405475 (Tex. App.—San Antonio May 20, 2015, no pet.)……...……..8

*City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102 (Tex. App.—Dallas 2013, no pet.)……………………..………………..3

*City of Midlothian v. Black*, 271 S.W.3d 791 (Tex. App.—Waco 2008, no pet.)...14

*City of San Antonio v. De Miguel*, 311 S.W.3d 22

(Tex. App.—San Antonio 2010, no pet)………………………………..…6

*City of San Antonio v. Pollock*, 284 S.W.3d 809 (Tex. 2009)…......10, 11, 13, 16, 21

*City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997)…...........…………………..24

*City of Van Alstyne v. Young,* 146 S.W.3d 846 (Tex. App.—Dallas 2004, no pet.)…………………………………………..25

*Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540 (Tex. 2003)……………6, 30

*Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339 (Tex. 1998)……………………. …………..………………30, 31

*Dall. Cnty. v. Logan,* 407 S.W.3d 745 (Tex. 2013)……....…………….......8

*Ector Cnty. v. Breedlove*, 168 S.W.3d 864 (Tex. App.—Eastland 2004, no pet.)............................................................31, 32

*EPGT Texas Pipeline, L.P. v. Harris Cnty. Flood Control Dist.*, 176 S.W.3d 330 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd)………….…………..28, 29

*Evatt v. Texas Dept. of Transp.*, No. 11-05-00031-CV, 2006 WL 1349352 (Tex. App.—Eastland May 18, 2006, pet. denied) (mem. op.)…..………...13, 17

*Galveston Racquet Club, Inc. v. City of Galveston*, 178 S.W.3d 167 (Tex. App.—Houston [1st Dist.] 2005, no pet.)………….… …………………31

*General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591 (Tex. 2001)……………... …………………..…………10, 13, 15

*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468 (Tex. 2012)……...……..6

*Howard v. City of Kerrville,* 75 S.W.3d 112 (Tex. App.—San Antonio 2002, pet. denied)………………………………17, 18

*Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532 (Tex. 2013)....7, 17–19

*Karnes City v. Kendall*, 172 S.W.3d 624
(Tex. App.—San Antonio 2005, pet. denied)………………………………………..24

*LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49 (Tex. 1992)..…..27

*Rusk State Hosp. v. Black,* 392 S.W.3d 88 (Tex. 2012)………...………………….8, 9

*Ryder Integrated Logistics, Inc. v. Fayette County*,
453 S.W.3d 922 (Tex. 2015)……………………………………………...………26

*San Antonio Water Sys. v. Overby*, 429 S.W.3d 716
(Tex. App.—San Antonio 2014, no pet.)………..…………….2, 12-15, 30–32, 34

*Sloan Creek II, L.L.C. v. N. Tex. Tollway Auth.,* No. 05-14-01456-CV,
2015 WL 5093318 (Tex. App.—Dallas Aug. 28, 2015, no. pet. h.)…..16, 17, 19, 21

*State v. Agnew*, No. 13-05-00143-CV, 2006 WL 1644678
(Tex. App.—Corpus Christi June 15, 2006, no pet.) (mem. op.)...........................13

*Tarrant Regional Water District v. Gragg,* 151 S.W.3d 546 (Tex. 2004)........17–19

*Teague v. City of Dall.*, 344 S.W.3d 434 (Tex. App.—Dallas 2011, pet. denied)..30

*Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440 (Tex. 1993)………...…..6

*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004)...7, 11, 23

*Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*,
397 S.W.3d 162 (Tex. 2013)...…...............................................................................6

*Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637 (Tex. 2004).....6, 33

*Tex. Highway Dep't v. Weber,* 219 S.W.2d 70 (1949)………….……..…….21, 22

*Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864 (Tex. 2000)....30

*Tex. Parks & Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*,
235 S.W.3d 692 (Tex. 2007)………………………………………………...25

*Toomey v. Tex. Dep't of Transp.*, 01-05-00749-CV, 2007 WL 1153035
(Tex. App.—Houston [1st Dist.] Apr. 19, 2007, no pet…………………..…….18

## Statutes

Tex. Const. art. I, § 17……………..……………………………………………….9

Tex. Civ. Prac. & Rem. Code § 101.021(1)……………..………………………...passim

Tex. Civ. Prac. & Rem. Code § 101.001(2)…………... …………………………..27

## STATEMENT OF CASE

| | |
|---|---|
| **Nature of the Case:** | This action arises from flood water damage to Appellant Hetul Bhakta's ("Bhatka") property, for which Bhatka filed suit against the Texas Department of Transportation ("TxDOT") and a second defendant who is not a party to this appeal, asserting claims for nuisance, inverse condemnation, and negligent operation of motor-driven equipment. CR 78–85. |
| **Trial Court:** | The Honorable Richard C. Terrell, Presiding Judge of the 79th Judicial District Court of Brooks County, Texas. |
| **Trial Court Disposition:** | The trial court granted TxDOT's First Amended Plea to the Jurisdiction, and dismissed TxDOT as to all of Bhakta's claims. CR 117. |
| **Prior Court of Appeals Proceedings:** | Following the trial court's denial of Bhakta's Motion for Reconsideration and Rehearing, Bhakta filed an accelerated interlocutory appeal of the granting of TxDOT's First Amended Plea to this Court. TxDOT filed a Motion to Dismiss for Want of Jurisdiction, asserting Bhakta failed to file a timely notice of appeal. |
| **Prior Court of Appeals Disposition:** | Dismissed. *Bhakta v. Tex. Dep't of Transp.*, No. 04-14-00063-CV, 2014 WL 1499810 (Tex. App.—San Antonio Apr. 16, 2014, no pet.) (mem. op.) (per curiam). |

## ISSUE PRESENTED

Whether the trial court properly granted TxDOT's First Amended Plea to the

Jurisdiction.[1]

---

[1] TxDOT notes that it is difficult to match the issues presented by Bhakta with the arguments in the body of Bhakta's brief, therefore TxDOT presents the sole issue in this case – whether the trial court properly granted TxDOT's First Amended Plea to the Jurisdiction – and addresses what it deems to be the issues Bhakta has attempted to raise, as well as other pertinent jurisdictional issues.

**TO THE HONORABLE COURT OF APPEALS:**

Appellee, the Texas Department of Transportation ("TxDOT"), requests affirmance of the trial court's granting of its First Amended Plea to the Jurisdiction.

## STATEMENT OF THE FACTS

### I.      Factual background.

Appellant Hetul Bhakta ("Bhakta") operates a Budget Inn located at 1033 N. U.S. Hwy 281 in Falfurrias, Texas. CR 78.   Bhakta alleges that his property was damaged by flooding on three separate occasions—April 16, 2010, May 25, 2010, and an unspecified date in 2012.[2] CR 80.   Bhakta contends this flooding was the result of increased storm-water runoff that in turn resulted from construction work on Highway 281 (the "Project"). CR 80–81.

TxDOT was responsible for the design of the Project up to its "letting," or the point upon which contractors bid for the award of the contract to perform the actual construction work. CR 139–40.  Ballenger Construction Company ("Ballenger") was

---

[2] To date, Bhakta has not been able to articulate when the alleged third flooding incident purportedly occurred (the Third-Amended Petition merely states "in 2012," while Appellant's brief states "in June of 2012"). CR 80; Appellant's Br. at 9.  No evidence exists in the record regarding the date of the alleged 2012 flood event.  For example, Defendant Ballenger produced evidence of Federal Emergency Management Agency ("FEMA") "Proof of Loss" forms submitted by Bhakta with regard to the April and May 2010 flood events, and in the final judgment, subsequently agreed to pay for any property damage from the flood events to the Budget Inn not covered by FEMA, without reference to the number of flood events agreed to have occurred. 3rd Supp CR 66, 88–185; 1st Supp CR 6.  Nonetheless, as discussed in detail below, whether or when the third flooding event occurred is irrelevant to the determination of the issues before this Court, and this brief *assumes arguendo* that a third flood did occur in June of 2012.

1

awarded the Project, and either performed the construction work at issue or subcontracted out certain portions of the work.[3] CR 36, 41–47, 172, 178–79.

Bhakta's asserted claims all relate to the storm-water drainage system on the Project. CR 81–83. The TxDOT plans and specifications for the Project called for the contractor to maintain a drainage system that conveyed excess rainwater to an outfall or discharge point. CR 153–54, 172. Specifically, the TxDOT plans required an unbroken sequencing between the highway's old drainage system and the Project's new drainage system, as a continuous series of pipes was needed in order to properly convey the water from the highway to the designated outfall point. CR 162–64, 171–72. However, despite its contractual responsibility to do so, Ballenger failed to maintain the proper connectivity in the drainage system during the Project's construction. CR 156, 165, 161.

The missing connections in the drainage system caused, at least in part, the flooding of Bhakta's property. CR 161. Other factors may have included a combination of the Budget Inn's location in a low-lying area close to the highway and severe storms that produced an extraordinary amount of rainfall. CR 166–67,

---

[3] Ballenger named Leal Construction, Inc. ("Leal") as a third-party defendant in the underlying suit. CR 35–47. While the contract between Ballenger and Leal appears to contemplate the work at issue in this appeal, it is unclear from the record whether it was Leal or Ballenger who actually performed the work, as Leal ceased work on the Project at some point before its completion. CR 213. For consistency with Bhakta's allegations, this brief will refer to the construction work performed as Ballenger's.

224. After becoming aware of the 2010 flood events, TxDOT instructed Ballenger to reestablish adequate drainage in the area. CR 223.

## II.     Relevant procedural history.

Bhakta filed suit against both TxDOT and Ballenger asserting claims for inverse condemnation, nuisance, and negligence. CR 7–11. Bhakta received four pleading opportunities, culminating in the filing of his Third Amended Petition on October 17, 2013.[4] CR 78.

TxDOT filed its First Amended Plea to the Jurisdiction on September 20, 2013 (the "Plea"), CR 69, and the trial court granted TxDOT's Plea on October 21, 2013, CR 117. After the trial court denied Bhakta's Motion for Reconsideration and Rehearing, Bhakta filed an accelerated interlocutory appeal of the granting of TxDOT's Plea to this Court. However, Bhakta failed to timely file its notice of interlocutory appeal and the interlocutory appeal was dismissed. *See Bhakta v. Tex. Dep't of Transp.*, No. 04-14-00063-CV, 2014 WL 1499810 (Tex. App.—San Antonio Apr. 16, 2014, no pet.) (mem. op.). The case then proceeded in the trial

---

[4] While the Third-Amended Petition was filed after TxDOT's Plea, it is the live pleading for the purpose of this Court's review, as it was filed before the trial court's ruling, and counsel for Bhakta specifically referenced that petition during oral argument at the hearing on TxDOT's Plea. 7 RR 10-14. *See, e.g., Church v. City of Alvin*, No. 01-13-00865-CV, 2015 WL 3916708, at *4 (Tex. App.—Houston [1st Dist.] June 25, 2015, no. pet. h.) (mem. op.) (discussing whether live pleading at time of city's plea or amended pleading filed four days before the hearing was operative pleading for review); *City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013, no pet.) (holding amended petition filed before trial court ruled on plea to the jurisdiction was live pleading for purposes of plea).

3

court against the second defendant, Ballenger, concluding in a settlement between Bhakta and Ballenger. 1st Supp CR 6–7. The agreed final judgment, signed on March 9, 2015, incorporated the trial court's dismissal of Bhakta's claims against TxDOT. 1st Supp CR 7. On March 30, 2015, Bhakta filed a notice of appeal of the final judgment with respect to TxDOT. CR 362–63.

## SUMMARY OF THE ARGUMENT

While all of Bhakta's asserted causes of action against TxDOT fail to allege a valid waiver of sovereign immunity on multiple grounds, one overarching fact is fatal to each of them—this case involves nothing more than a contractor's negligence. Bhakta properly pled and pursued a valid negligence claim against Ballenger in the trial court. No amount of artful pleading, however, can turn that claim into claims for which TxDOT has waived sovereign immunity.

First, Bhakta cannot allege or establish a valid inverse condemnation claim for three distinct reasons: (1) TxDOT did not have the requisite intent to take his property; (2) Bhakta cannot meet the "public use" requirement for a takings claim; and (3) no intentional act of TxDOT caused Bhakta's alleged property damage. Notably, under the heightened pleading standard set forth in *City of Dallas v. Jennings*, 142 S.W.3d 310 (Tex. 2004), Bhakta must allege that TxDOT knew the Project would cause the flooding of his property or knew that such flooding was substantially certain to result from the Project. He has not, and cannot, as the

4

jurisdictional evidence shows TxDOT in fact intended the opposite—that the Project have a working and continuous storm-water drainage system along Highway 281. Likewise, because Bhakta cannot allege the diversion of water onto his property was intentional, he cannot meet the public use requirement, which distinguishes a negligence claim from an inverse condemnation claim. Lastly, Bhakta's inverse condemnation claim further fails because Bhakta has not pled, and cannot show, that any specific act by TxDOT caused his alleged property damage.

Next, Bhatka asserts a claim for negligence under Section 101.021 of the Texas Tort Claims Act ("TTCA"), which provides a limited waiver of sovereign immunity when property damage arises "from the operation or use of a motor-driven vehicle or motor-driven equipment." Tex. Civ. Prac. & Rem. Code § 101.021(1)(A). While Bhakta speculates his property damage must naturally be the result of the use of motor-driven equipment, this claim fails two separate requirements of Section 101, as (1) no governmental employee was operating the alleged equipment at issue, and (2) Bhakta's allegations fail § 101.021's causal nexus requirement, since the alleged equipment at most furnished the condition that made Bhakta's injury possible.

Finally, Bhakta's nuisance claim against TxDOT is dependent on a valid waiver of immunity from another source, as nuisance liability of a governmental entity arises only when immunity is clearly and unambiguously waived by statute or

5

when the nuisance rises to the level of a constitutional taking. As Bhakta cannot allege a valid takings claim or waiver of immunity under Section 101 of the TTCA, TxDOT retains immunity from Bhakta's nuisance claim.

## ARGUMENT

### I. Scope and standard of review.

#### A. Sovereign immunity.

"State agencies like TxDOT are immune from liability in Texas unless the Legislature waives that immunity." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 641 (Tex. 2004). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). The burden is on the plaintiff to allege facts affirmatively demonstrating the trial court's subject matter jurisdiction over the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44, 446 (Tex. 1993). Whether a court has subject matter jurisdiction is a question of law that is reviewed de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012).

#### B. TxDOT's Plea to the Jurisdiction.

"Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the governmental entity has been sued unless it consents to suit and, thus, sovereign immunity is properly asserted in a plea to the jurisdiction." *City*

6

*of San Antonio v. De Miguel*, 311 S.W.3d 22, 25 (Tex. App.—San Antonio 2010, no pet.) (citing *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224–26 (Tex. 2004)). In a plea to the jurisdiction, a party may challenge the pleadings, the existence of jurisdictional facts, or both. *Miranda,* 133 S.W.3d at 226–27. If a plea to the jurisdiction challenges the pleadings, the court must determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. *Id.* at 227. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.*

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the court must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *Id.* Where the jurisdictional challenge implicates the merits of the plaintiff's cause of action, the court must review the relevant evidence to see if a fact issue exists. *Id.* If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the court must rule on the plea to the jurisdiction as a matter of law. *Id.* The standard of review in these situations "generally mirrors" the summary judgment standard. *Id* at 228.

TxDOT's Plea to the Jurisdiction challenged the sufficiency of Bhakta's pleadings and the trial court reviewed the existence of jurisdictional facts. CR 69–77; 4 RR 23–5 RR 13; 1st Supp CR 7 ("The Court after considering the motion and

7

arguments of counsel, *and evidence* admitted granted TxDOTs [sic] Plea to the Jurisdiction and by interlocutory Order dismissed the Plaintiff's claims against TxDOT") (emphasis added).[5]

## C. Additional jurisdictional challenges.

Along with those identified in its Plea, TxDOT also raises several additional jurisdictional challenges for the first time on appeal. *See* Appellee's Br. at Sections II. D, II. E, III. A. Courts of appeal have been directed to address such additional grounds even when raised for the first time in an appeal. *See Dall. Cnty. v. Logan,* 407 S.W.3d 745, 746 (Tex. 2013); *City of Leon Valley v. Wm. Rancher Estates Joint Venture*, No. 04-14-00542-CV, 2015 WL 2405475, at *2 (Tex. App.—San Antonio May 20, 2015, no pet.) (mem. op.). When doing so, the appellate court applies a modified standard of review. *Rusk State Hosp. v. Black,* 392 S.W.3d 88, 96 (Tex. 2012). If the pleadings and record neither demonstrate jurisdiction nor conclusively negate it, the governmental entity must show either that "the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings or, if such opportunity was not given, that the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded." *Id*. "If the governmental

---

[5] *See generally Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000) (A "court deciding a plea to the jurisdiction is not required to look solely to the [plaintiff's] pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.").

entity meets this burden, then the appellate court should dismiss the plaintiff's case." *Id.* Otherwise, the appellate court must remand the case to the trial court for further proceedings. *Id.*

### D.     Bhakta's claims were properly dismissed.

Despite four separate pleading attempts, including the filing of his Third Amended Petition *after* TxDOT's First Amended Plea to the Jurisdiction, Bhakta failed to allege facts that would support a valid waiver of immunity against TxDOT. Bhakta was given a full and fair opportunity to develop the record, and introduced jurisdictional evidence that included testimony from both a TxDOT engineer and Danny Bhakta,[6] in addition to other exhibits. CR 93-116, 127-361; 2nd Supp CR 17-58. Moreover, Bhakta's pleadings and the evidence submitted affirmatively negate the existence of jurisdiction, and reveal the jurisdictional defects in Bhakta's claims are incurable through further amendment to his pleadings.

## II.     Bhakta's inverse condemnation claim was properly dismissed.

The Texas Constitution waives sovereign immunity when a landowner's property is "taken, damaged or destroyed for or applied to public use without adequate compensation." Tex. Const. art. I, § 17.[7] However, to invoke that waiver,

---

[6] Danny Bhakta appears to be another member of the Appellant's family involved with the Budget Inn. 2nd Supp CR 51.

[7] The three distinct claims allowed by this section—taking, damaging, and destruction of property —are all commonly referred to as a "taking." *City of Dall. v. Jennings,* 142 S.W.3d 310, 313 n. 2 (Tex. 2004).

a plaintiff must plead a valid inverse condemnation claim. *See Bell v. City of Dall.*, 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.) ("When a plaintiff does not allege a valid inverse condemnation claim, however, governmental immunity does apply and the trial court should grant a plea to the jurisdiction."). To state a valid takings claim, Bhakta must allege that (1) TxDOT intentionally performed certain acts, (2) that resulted in a "taking" of its property, (3) for public use. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001).

Moreover, even if a valid inverse condemnation claim is alleged, if there is no evidence to support the plaintiff's allegations or those allegations are negated as a matter of law, then the government retains immunity from suit. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009) ("Since there was no evidence of a compensable taking, the City is immune from the Pollocks' property damage claims."). Whether particular facts are enough to constitute a taking is a question of law. *Little-Tex*, 39 S.W.3d at 598. Here, Bhakta cannot meet the intent, public use, and causation elements of a valid takings claim.

A.    **TxDOT did not have the requisite intent to support a valid takings claim.**

"Intent" is an element of an inverse condemnation claim. *City of Dall. v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). The Texas Supreme Court in *Jennings*

10

set forth the requisite standard for evaluating a governmental entity's intent, holding a court may find that a governmental entity acted intentionally if the entity: (1) knows that a specific act is causing identifiable harm; or (2) knows that the specified property damage is substantially certain to result from an authorized government action—that is, that the damage is necessarily an incident to, or necessarily a consequential result of the government's action. *Jennings*, 142 S.W.3d at 314. The *Jennings* standard is a heightened pleading standard of intent, and mere intent to operate a public work is insufficient to support an inverse condemnation claim. *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004) (recognizing that the mere intentional operation of a sewer system is insufficient to support liability for inverse condemnation claims).

Further, it is not enough to claim that the government should have known that damage was substantially certain—actual knowledge is required. *City of Keller v. Wilson*, 168 S.W.3d 802, 829 (Tex. 2005). Importantly, a government entity's knowledge must be determined as of the time it acted, not with benefit of hindsight. *Pollock*, 284 S.W.2d at 821. Finally, a governmental entity's awareness of the mere possibility of damage is no evidence of intent. *Id.* at 821.

Therefore, under *Jennings*, Bhakta must allege that TxDOT knew the Project would cause the flooding of his property or knew that such flooding was substantially certain to result from the Project. Bhakta, however, has merely alleged

11

that TxDOT intended to build a road, the building of which damaged his property. The specific factual allegations in Bhakta's Third Amended Petition regarding TxDOT's intent are:

- "TxDOT intentionally performed certain acts in the design of the flood control system for the roadway. . ." CR 80.

- "While TxDOT intended for Ballenger to make the alterations [to the drainage system] they were done in such a way that the system no longer protect Plaintiff's property. . ." CR 80.

- "TxDOT's intentional plan for the storm and waste water control. . ." CR 80.

These allegations are insufficient to support a valid takings claim, and in fact, are analogous to the allegations in a litany of cases where courts have granted or affirmed pleas to the jurisdiction. For example, in *Jennings*, the landowners brought a takings claim against the city after the city unclogged a sewer main, which resulted in raw sewage flooding their home. 142 S.W.3d at 314. The landowners asserted that "because the city intended to unclog a backup, and because this action resulted in the sewage flood, the City should be liable for the damage caused by the flood." *Id*. at 313. The Court disagreed, holding there was no evidence the City knew that flooding would occur when it unclogged the sewer line, nor was that evidence that the act of unclogging a sewer was substantially certain to lead to flood damage. *Id*. at 315.

12

This court also addressed intent allegations comparable to Bhakta's in *San Antonio Water System v. Overby*, 429 S.W.3d 716, 720–21 (Tex. App.—San Antonio 2014, no pet.). There, the plaintiffs alleged the city knew the manner in which it maintained and graded a sewer system in a nearby alley had and would cause flooding to their property. The court held that evidence of the city's knowledge the alley's grade could cause water from the alley to flow onto the plaintiffs' property during a heavy rain was not evidence of the city's intent to damage their property. *Id* at 721. Instead, the court explained that because the rain water migration to the plaintiffs' property was preventable, it was "not necessarily an incident to, or necessarily a consequential result" of the city's maintaining the sewer system, and accordingly there was no evidence the City intended to damage the property. *Id.* (citing *Pollock*, 284 S.W.3d at 821).

Multiple other courts have also dismissed intent allegations similar to Bhakta's. *See Evatt v. Tex. Dep't of Transp.*, No. 11-05-00031-CV, 2006 WL 1349352 (Tex. App.—Eastland May 18, 2006, pet. denied) (mem. op.) (landowners' allegation that TxDOT intentionally placed concrete barriers on top of adjacent highway during construction project was insufficient to allege that TxDOT either knew or was substantially certain that their homes would flood as a result of the construction methods utilized by the TxDOT); *State v. Agnew*, No. 13-05-00143-CV, 2006 WL 1644678 (Tex. App.—Corpus Christi June 15, 2006, no pet.) (mem.

13

op.) (claim for flood damage arising from construction of state highway failed to allege TxDOT knew that flooding was substantially certain to occur from construction); *Church v. City of Alvin*, No. 01-13-00865-CV, 2015 WL 3916708 (Tex. App.—Houston [1st Dist.] June 25, 2015, no. pet. h.) (mem. op.) (no evidence of intent to support inverse condemnation claims that the City's replacement of a culvert and reconfiguration of the drainage in connection with a bridge project caused increased flooding on property); *City of Midlothian v. Black*, 271 S.W.3d 791 (Tex. App.—Waco 2008, no pet.) (landowner failed to plead a valid inverse condemnation claim when petition merely alleged that city's acts "in evaluating, approving, and inspecting" were intentional, without any allegation that city knew that landowner's damage was necessarily incident to, or necessarily a consequential result of, the city's action.).[8]

Here, Bhatka's takings claim rests on the same faulty premise as that of the plaintiffs' in *Jennings* and *Overby*—that TxDOT intended to build a road, the building of the road resulted in flooding to his property, and therefore TxDOT should be liable for the damage. *See, e.g.,* Appellant's Br. at 25 ("Appellee has offered nothing to contradict Bhakta's assertions that his motel property was flooded and the

---

[8] *Cf. Harris Cnty. Flood Control Dist. v. Kerr*, No. 13-0303, 2015 WL 3641517 (Tex. June 12, 2015, Mot. for reh'g filed.) (concluding that homeowners raised fact issue concerning whether government entities knew that their actions caused flooding where some evidence existed that (1) entities received engineering advice explaining that additional development would cause damaging flooding, and (2) entities knew that development would lead to damaging flooding).

14

flooding caused damage to his motel."). This assertion is insufficient to support the intent element of a valid takings claim.

Bhakta does not, and cannot, plead any factual allegation supporting that TxDOT knew or was substantially certain that any flooding would result from the implementation of the Project, or that such flooding would damage Bhatka's property. Flooding is not the necessary consequence of building a highway, and Bhakta cannot show that the flooding of his property was necessarily incident to the Project. In fact, to do so, Bhakta must claim Ballenger's *negligence* was necessarily incident to the Project. Negligence is, by definition, entirely preventable, and Ballenger's therefore was not necessarily incident to the Project or a necessary consequence of its design and letting. *See Overby*, 429 S.W.3d at 721.

### B. The jurisdictional evidence does not contain a fact issue regarding TxDOT's intent.

Morevoer, Bhakta's argument that the evidence submitted has at least created a fact issue necessitating remand is unavailing. Notably, in *Ahart v. Texas Department of Transportation*, No. 14-05-00027-CV, 2006 WL 2167223, at \*4 (Tex. App.—Houston [14th Dist.] Aug. 1, 2006, pet. denied) (mem. op.), the court addressed jurisdictional evidence similar to that contained in the record in the present case.

There, the landowners asserted a takings claim alleging that a TxDOT highway project blocked storm-waters from flowing into a nearby drainage ditch in

15

the manner they had before the project's construction, resulting in the flooding of their homes. *Id.* at *1. The landowners further asserted that TxDOT intentionally designed and constructed the drainage system for the highway project to handle the capacity of a five-year storm event, the necessary consequence of which being that storms of a greater degree would inevitably flood their subdivision. *Id.* at *3.

The landowners presented evidence of TxDOT's intent based on the deposition testimony of TxDOT's engineer, who stated in relevant part that: (1) prior to the construction of the project, TxDOT was aware of the nearby drainage ditch that was subsequently blocked; and (2) TxDOT understood that because the storm sewers for the project were designed to handle a five-year storm, an overflow condition could occur during a storm of greater magnitude. *Id.* at *4.[9]

The court in *Ahart* held the testimony of the TxDOT engineer and landowner's expert addressed only causation, not intent, and "[s]uch testimony does not raise a fact issue with regard to whether TxDOT knew flooding . . . would result or that such flooding was substantially certain to result from the design and construction of [the highway]."[10] *Id.* In the same manner, the record here contains testimony from

_____

[9] The landowners additionally presented the testimony of their expert who testified the TxDOT storm sewer caused the flooding of their home. *Id.*

[10] "It is certainly necessary for an owner to establish cause in fact as a prerequisite to a claim for inverse condemnation." *Sloan Creek II, L.L.C. v. N. Tex. Tollway Auth.,* No. 05-14-01456-CV, 2015 WL 5093318, at *6 (Tex. App.—Dallas Aug. 28, 2015, no. pet. h.) (citing *Pollock*, 284 S.W.3d at 821). "But cause in fact without meeting the *Jennings* standard of knowledge is not enough to prove a governmental entity's intent as demonstrated by each of the supreme court's opinions after *Jennings* where the standard of culpability of a governmental entity's article I,

16

TxDOT's engineer and Danny Bhakta addressing the cause of Bhakta's property damage (the disconnects in the drainage system), but none supporting that TxDOT knew Bhakta's property would flood or that such flooding was substantially certain to result from the design and construction of the Project.

### C. Any alleged recurrence of flooding is not probative of TxDOT's intent.

Relying on *Tarrant Regional Water District v. Gragg,* 151 S.W.3d 546 (Tex. 2004) and *Kopplow Development, Inc. v. City of San Antonio*, 399 S.W.3d 532 (Tex. 2013), Bhakta's argument in support of his inverse condemnation claim primarily asserts that because Bhakta has alleged the recurrence of flooding, he has alleged a valid takings claim. *Kopplow* and *Gragg*, however, demonstrate that Bhakta's recurrence argument is simply a red herring, and is not probative of the correct inquiry in this case—whether TxDOT had the requisite intent at the time it designed the Project.

#### 1. *Gragg's* Recurrence Requirement

"A 'taking' by flooding is a specific type of 'taking.'" *Howard v. City of Kerrville,* 75 S.W.3d 112, 117 (Tex. App.—San Antonio 2002, pet. denied). As explained in *Gragg*, establishing a taking by flooding generally requires more than a single flood event. 151 S.W.3d at 555 ("While nonrecurrent flooding may cause

---

section 17, taking or damage involving physical damage to property has been at issue." *Id*. (listing cases).

17

damage, a single flood event does not generally rise to the level of a taking.").[11]  The

*Gragg* court more fully elaborated:

> In the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur . . . The recurrence requirement assures that the government is not held liable for taking property when a project's adverse impacts, and by implication its benefit to the public, are too temporal or speculative to warrant compensation.

*Id*.; *see also Kopplow*, 399 S.W.3d at 537 ("The focus of *Gragg* is that the government's negligent acts that result in an occasional flood do not benefit the public and cannot qualify as a taking.").

### 2.  *Kopplow* and *Gragg* are factually distinguishable.

While both *Kopplow* and *Gragg* allowed inverse condemnation claims under their respective facts, neither case held that the recurrence of flooding by itself constitutes evidence of a governmental entity's intent, and in each case, the Court relied on other indicia of intent in reaching its decision.

In *Gragg*, the landowner operated a cattle ranch, which was historically subject to frequent flooding from a nearby river (the gentle nature of which actually contributed to the property's suitability for cattle-ranching by increasing the land's

---

[11] *See also Evatt*, 2006 WL 1349352 at *4 ("The Department contends that the homeowners cannot plead a takings claim in good faith . . . [based] on the fact that only a single flooding event occurred. We agree."); *Toomey v. Tex. Dep't of Transp.*, No. 01-05-00749-CV, 2007 WL 1153035, at *4 (Tex. App.—Houston [1st Dist.] Apr. 19, 2007, no pet.) (mem. op.) (landowners could not demonstrate TxDOT had requisite intent when only one flooding event was alleged).

fertility). *Id.* at 551. However, after the regional water district constructed a reservoir with minimal overflow capacity, the landowner presented evidence that the reservoir's construction changed the nature of the flooding to the land, making it more forceful and destructive, damaging the ranch. *Id* at 555. Therefore, rather than basing its decision on merely the recurrent nature of the flooding—which notably was present both before and after the reservoir's construction—the court in *Gragg* upheld the trial court's finding of a taking based on the fact that "the extensive damage the Gragg Ranch experienced was the inevitable result of the reservoir's construction and *of its operation as intended*." *Id.* (emphasis added).[12]

*Kopplow* is likewise factually distinguishable and does not support Bhakta's contention that recurrence is a probative factor of TxDOT's intent in the present case, as the issue before the *Kopplow* court was whether the landowner's inverse condemnation claim was premature because the property *had not yet flooded*. 399 S.W.3d at 533. There, the city planned a regional storm water detention facility, and knew the project would inundate portions of the landowner's property, as well as one other tract. *Id.* at 534. The city obtained a drainage easement for the other

_____

[12] Further, in considering specific evidence of the government's intent under the *Jennings* standard, the *Gragg* court relied on modeling by the government's engineer during the project's design that predicted flooding, the governmental entity's own documentation of hundreds of releases of water in amounts that exceeded the flood capacity of the river, the recurrent flooding of the ranch following the releases of water, and an internal government memorandum stating there was a need to release water in different ways to avoid flooding. *Sloan Creek II,* 2015 WL 5093318 at *6.

19

affected tract, but was refused when it requested one on the property at issue. *Id*. at 537–538.

The effect of the storm water detention facility was to prevent the landowner from developing his property as planned unless it was filled to a new flood level, and the landowner brought an inverse condemnation claim seeking damages for the fill. *Id*. at 540. The Court held the landowner's claim was not premature even though the property had yet to flood, stating "the claim is based on the thwarting of approved development, not flooding." *Id*. Accordingly, the Court did not assess recurrence as an indicia of intent, stating:

> Here, we need not look to evidence of the frequency of flooding to deduce the government's intent: the City knew the project would inundate part of Kopplow's property before it ever began construction, prompting the City to seek a drainage easement from Kopplow.

*Id*. at 537.

### 3. Bhakta cannot impute intent to TxDOT through recurrence.

Bhatka's argument in support of his inverse condemnation claim appears to rely exclusively on the faulty conclusion that because his property flooded three times, there was a taking. This ignores the *Jennings* intent requirement. As Bhakta admits, "TxDOT's intent must be examined at the time it made its decision to construct the U.S. Highway 281 upgrade." Appellant's Br. at 23.

The three alleged flooding events all occurred *after* TxDOT's design of the Project, and were the result of Ballenger's negligent construction work, as opposed to the Project's design or intended operation.  Bhakta therefore cannot show how the alleged fact his property flooded three times during Ballenger's construction work has any probative bearing on whether TxDOT had the requisite intent to take his property at the time it originally designed the Project. *See, e.g.*, *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 196 (Tex. App.—Dallas 2010, no pet.) (holding no evidence of intentional act by city despite its knowledge that "[s]ince at least 1992 . . . [the subject property] flooded every time there is a hard rain lasting more than 15 minutes.").[13]

D.      **Bhakta's allegations against TxDOT additionally fail the public use requirement necessary for a valid takings claim.**

Because Bhakta cannot allege the diversion of water onto his property by TxDOT was intentional, he cannot meet the public use requirement necessary to state a valid takings claim.  The public-use requirement distinguishes a negligence claim from an inverse condemnation claim. *See Pollock,* 284 S.W.3d at 820–21;

---

[13] *See also City of Keller v. Wilson*, 168 S.W.3d 802, 830 (Tex. 2005) ("The missing piece in the evidence here is proof that the City knew the plans it approved were substantially certain to increase flooding on the Wilsons' properties. While the City certainly knew that fact after the flooding started, the Wilsons never pleaded or submitted to the jury any takings theory other than the City's initial approval."); *Sloan Creek II*, 2015 WL 5093318 at *6 (denying taking claim relating to design and construction of drainage system and rejecting landowners reliance on *Gragg* to support assertion that "erosion subsequent to the design and construction of the Tollway improvements is probative of NTTA's and TxDOT's knowledge at the time of design").

*Jennings,* 142 S.W.3d at 314. "When damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be 'taken or damaged *for public use.*'" *Jennings,* 142 S.W.3d at 313 (quoting *Tex. Highway Dep't v. Weber,* 219 S.W.2d 70, 71 (1949)). The court in *City of Borger v. Garcia*, 290 S.W.3d 325, 331–32 (Tex. App.—Amarillo 2009, pet. denied) addressed an analogous situation, stating:

> If the City intended to divert surface waters onto appellees' property to protect other homeowners, then appellees have a claim for a taking. On the other hand, if surface waters were not intentionally diverted to appellees' property, then it cannot be said that appellees' property was taken for a public use. Stated another way, assuming that there was, in fact, a diversion of surface waters onto appellees' property, if such a diversion was not intended by the City, appellees would possess a claim for negligence, but would not be able to establish that the unintended diversion of surface waters onto their property was for a public use.

(internal citations omitted). Because Bhakta at best has a negligence claim for the unintended diversion of water to his property, he cannot show his property was taken for a public use.

### E. TxDOT's alleged actions did not cause Bhakta's property damage.

Bhakta has not alleged any specific act taken by TxDOT other than its design of the Project. CR 80–83. Bhakta's property damage, however, was not caused by the Project's design or intended operation, but by Ballenger's negligent construction.

*Jennings* contemplates "a specific act . . . causing identifiable harm" as the necessary intentional act to form the basis of a valid inverse condemnation claim.

22

142 S.W. 3d at 314; *see also Cenizo Corp. v. City of Donna*, No. 13-12-00308-CV, 2013 WL 1800270, at *3 (Tex. App.—Corpus Christi Apr. 25, 2013, no pet.) (mem. op.) (discussing application of *Jennings* standard to an identifiable specific act). Bhakta seeks to gloss over the lack of any specific act by TxDOT that caused his property damage by simply lumping TxDOT and Ballenger together. *See, e.g.,* CR 82 ("Defendant TxDOT and Ballenger Construction's interference with the flow of surface waters . . ."); CR 83 ("The Defendants have acted intentionally and/or unreasonably . . ."). However, it is insufficient to allege that both TxDOT and Ballenger were involved with the Project without identifying a specific intentional act by TxDOT causing the property damage at issue.[14]

Accordingly, as TxDOT's alleged (and only) act of designing the Project did not cause Bhakta's property damage, it cannot form the basis of a valid inverse condemnation claim capable of waiving its immunity.

F. **The jurisdictional defects in Bhakta's claims are incurable by further amendment.**

The jurisdictional evidence further shows that Bhakta cannot subsequently amend his pleadings to state a valid takings claim against TxDOT. For example,

---

[14] "Merely designing the pleadings to track language in *Jennings* does not satisfy the standards established by *Miranda* because we review the pleadings as well as the evidence submitted below on the plea to the jurisdiction." *City of Dall. v. Blanton*, 200 S.W.3d 266, 273 (Tex. App.—Dallas 2006, no pet.)

23

even though Ballenger was an independent contractor, Bhakta's Third Amended Petition seems to imply an allegation that TxDOT should be liable for Ballenger's negligent construction work under some type of agency theory. *See, e.g.,* CR 80 ("Ballenger Construction Company, the agent or the employee or contractor of the Texas Department of Transportation . . ."). Whether characterized as a cause of action against TxDOT for the construction work itself, or an alleged failure to supervise Ballenger, further development of this allegation can only result in a negligence claim against TxDOT—a claim for which Bhakta cannot show sovereign immunity has been waived. *See City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997) (stating that mere negligence that contributes to property damage does not constitute a taking).[15]

Nor can Bhakta prevail on allegations that TxDOT failed to correct the Project's drainage system between the first flood in May of 2010 and the alleged third flood in 2012. "A governmental entity's failure to act, even in the face of evidence that curative measures are necessary to prevent future damage, rise only to the level of a negligence claim, and acts of mere negligence will not support a taking claim." *City of El Paso v. Ramirez*, 349 S.W.3d 181, 187 (Tex. App.—El Paso 2011,

---

[15] *See also AN Collision*, 310 S.W.3d at 196 ("The Texas Supreme Court has repeatedly held that acts of mere negligence will not support a taking claim."); *Karnes City v. Kendall*, 172 S.W.3d 624, 629 (Tex. App.—San Antonio 2005, pet. denied) (holding that even "gross negligence does not supply the requisite intent to sustain liability of a governmental entity for a constitutional takings claim").

no pet.) (holding allegations city was aware of potential for overflow and subsequently failed to take measures to prevent the overflow did not to rise to the level of a claim for inverse condemnation.)[16]

Finally, any allegation by Bhakta that TxDOT did not properly plan the Project similarly fails as a matter of law. *See Garcia*, 290 S.W.3d at 331 ("evidence that raises a fact issue in regard to the adequacy of the planning of the drainage system, at best, raises a fact issue as to whether the City was negligent in its design of the drainage system"). Accordingly, the trial court properly dismissed all of Bhakta's claims against TxDOT.

## III. Bhakta cannot establish a valid waiver of immunity under the Texas Tort Claims Act.

Bhakta next asserts a cause of action for negligence relating to the "operation of motorized driven equipment." CR 81–82. He contends the Texas Tort Claims Act ("TTCA"), Section 101.021(1), waives sovereign immunity for this claim. *See, e.g.,*

---

[16] *See also City of Keller v. Hall*, 433 S.W.3d 708, 727 (Tex. App.—Fort Worth 2014, pet. denied) (city's failure to comply with its master drainage plan in approving a developer's drainage plans did not show intent to cause flooding damage); *AN Collision*, 310 S.W.3d at 196 ("The evidence of Addison's failure to implement a flood control plan shows, at best, a failure to correct a problem that Addison knew existed. The alleged failure to act cannot be construed to be an intentional act or acts resulting in damage to or taking of Collision Center's property."); *City of Van Alstyne v. Young,* 146 S.W.3d 846, 850 (Tex. App.—Dallas 2004, no pet.) (holding that the City's knowledge of alleged problems with sewer pumps which had a history of failure and resulting back-ups was not the same as knowledge that the City's decision not to replace the pumps would result in a flood of the plaintiff's home); *Bell v. City of Dall.,* 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.) (pleadings containing only allegations that damage was caused by negligent omissions and no allegations that city intentionally performed acts affirmatively negated takings claim).

25

*Tex. Parks & Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 694 (Tex. 2007) ("The Texas Tort Claims Act provides a limited waiver of sovereign immunity when property damage arose from the operation or use of a motor-driven vehicle or motor-driven equipment.") (internal quotations omitted). Specifically, Texas Civil Practices and Remedies Code § 101.021 states:

> A governmental unit in the state is liable for:
>
> > (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> >
> > > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> > >
> > > (B) the employee would be personally liable to the claimant according to Texas law;

The vehicle-use requirement of this section is strictly construed. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015).

Here, Bhakta fails to establish a valid waiver of immunity under Section 101.021(1) for two separate reasons; as (1) TxDOT did not operate the alleged motor-driven equipment, and (2) even if it had, an insufficient causal nexus exists between the operation of the alleged motor-driven equipment and Bhakta's property damage.

## A. TxDOT did not operate the alleged motorized equipment.

First, Bhakta must show that a *government employee* actually operated the motor-driven equipment that caused his injury. *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex. 1992). The TTCA defines an "employee" as:

> a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, *but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.*

Tex. Civ. Prac. & Rem. Code § 101.001(2) (emphasis added). This statutory definition "requires both control and paid employment to invoke the TTCA waiver of immunity." *City of Hous. v. Ranjel*, 407 S.W.3d 880, 890 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "The type of control necessary to establish employee status for waiver-of-immunity purposes is control over the details of the operation or use *of the motor-driven equipment* or tangible personal property." *Id*. (emphasis added).

In the present case, the record does not establish who exactly operated the equipment at issue. [17] What it does establish—and what Bhakta admits—is that no TxDOT (i.e. government) employee ever operated the alleged motor-driven

---

[17] As previously noted, it is unclear from the record whether the motor-driven equipment was operated by Ballenger or its subcontractor Leal. CR 36, 41–47, 172, 178–79, 213.

27

equipment that performed work on the drainage system. CR 81 ("The Plaintiff's injury arose from the operation or use of a motor-driven vehicle or motor-driven equipment *by Ballenger* used to disconnect the . . .") (emphasis added).

Bhakta attempts to circumvent the fact that TxDOT did not perform the construction work in question by simply lumping TxDOT and Ballenger together, implying that Ballenger was the agent of TxDOT or performed the construction work on the drainage system at the direction of TxDOT. Bhakta's unfounded allegations, however, cannot transform Ballenger or Leal's construction workers into government employees under Texas law. [18]

Here, the jurisdictional evidence shows that TxDOT at most merely retained control over the end results of the Project, and not the daily operation of the motor-driven equipment. This is insufficient to support a waiver of immunity. *See EPGT Tex. Pipeline, L.P. v. Harris Cnty. Flood Control Dist.*, 176 S.W.3d 330, 337 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) ("These contract provisions . . . indicate control over the general requirements of the projects, and its proper completion, but do not show control over the details of Ramex's work with regard to Ramex employees use of motor-driven vehicles—the standard for determining whether a party is an employee or independent contractor within the scope of section

---

[18] "When the material underlying facts are not in dispute and can give rise to only one reasonable conclusion, the question whether a worker is an employee or an independent contractor is a question of law." *Ranjel*, 407 S.W.3d at 890.

28

101.021."); *Ranjel*, 407 S.W.3d at 891–92 (trial court erred in denying plea when jurisdictional evidence established City of Houston contracted with company to operate and maintain airport train system that city owned, and city merely controlled end result of system's operation and maintenance).

Additionally, the fact that TxDOT designed the overall Project is insufficient to convert the workers of a construction contractor into its governmental employees. *See EPGT Tex. Pipeline, L.P.,* 176 S.W.3d at 337 ("evidence that HCFCD participated in the construction plans and specifications, and made inspections as to the completion of the work according to the plans . . . does not create a fact issue that HCFCD had a right to control, or did control, the details of Ramex's work with respect to the operation of a motor-driven vehicle, the only type of activity for which HCFCD waives its immunity in tort.").

Accordingly, Bhakta has not alleged, and the evidence does not show, facts establishing Section 101.021's requirement that a government employee operate the motor-driven equipment in question. *See City of Alvin*, 2015 WL 3916708, at *8 ("Because the summary-judgment record contains no evidence that a City employee operated motor-driven equipment in connection with the bridge project, we hold that the trial court properly granted the City's jurisdictional plea on Church's claim under the Texas Tort Claims Act.").

**B.** **Bhakta cannot satisfy Secton 101.021's causal nexus requirement, as the alleged motorized equipment at most furnished a condition that made Bhakta's injury possible.**

Even *assuming arguendo* that a TxDOT employee had operated the alleged motor-driven equipment, Bhakta still would not be able to establish a valid waiver of immunity under the TTCA. To demonstrate a waiver under Section 101.021(1), a plaintiff must show a nexus between the employee's use of the vehicle and the injuries sustained. *Dall. Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542–43 (Tex. 2003).

A causal nexus means that "the [vehicle]'s use must have actually caused the injury." *Id.* at 543 (quoting *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 869 (Tex. 2001)). The operation or use of a motor vehicle "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Whitley,* 104 S.W.3d at 543 (citing *Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998)); *see also Teague v. City of Dall.*, 344 S.W.3d 434, 439 (Tex. App.—Dallas 2011, pet. denied) ("Thus, the causal nexus requires more than mere involvement of the property; the vehicle's use must have actually caused the injury."). Additionally when "an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the

condition that made the effect possible." *City of Dall. v. Hillis,* 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied) (citing *Bossley,* 968 S.W.2d at 343).

Claims such as Bhakta's involving negligent construction work that later causes flood damage do not fall within Section 101.021(1)'s waiver of immunity. For example, in *San Antonio Water Sys. v. Overby*, 429 S.W.3d 716, 722 (Tex. App.—San Antonio 2014, no pet.), the landowners introduced evidence showing that the governmental entity used motor-driven equipment to maintain an alley that sometimes flooded their yard with rainwater and sewage. This court held:

> The evidence conclusively proves that it was not SAWS's use of motor-driven equipment to excavate, repair, and refill the alley that damaged the Overbys' property. Rather, it was the condition of the alley that led to their damage, and a use of motor-driven equipment that results in a condition that causes an injury is not a sufficient nexus.

*Id*.

Similarly, in *Ector County v. Breedlove*, the plaintiffs sued Ector County after their home was damaged by flooding following heavy rains, alleging that the "[county] employees' negligent operation and use of motor-driven vehicles or motor-driven equipment proximately caused" the flood damage because the county's nearby "road and ditch work" and culvert installations were negligent. 168 S.W.3d 864, 865–66 (Tex. App.—Eastland 2004, no pet.). The court held that the use of the motor-driven equipment did not cause the plaintiff's injury within the meaning of the waiver language in Section 101.021(1)(A), stating "although the

31

[plaintiffs] attempted to bring their claim within the waiver of Section 101.021(1)(A) by phrasing their claim in terms of [the county's] 'use' of motor-driven equipment, [the county's] use of motor-driven equipment only furnished the condition—the increased grade and misplacement of culverts—that caused the flooding of their home." *Id.* at 867. *See also Galveston Racquet Club, Inc. v. City of Galveston*, 178 S.W.3d 167, 171 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding immunity was not waived because City's use of water pump created condition that made injury possible, but did not directly cause water leak).

Here, Bhakta argues that motor-driven equipment by Ballenger was used to improperly disconnect the existing storm water control system, which led to the flooding of his property after heavy rains. Appellant's Br. at 25. As in *Ector County* and *Overby*, the drainage system at issue here only furnished the condition that caused the flooding of Bhakta's property after heavy storms. Bhakta does not allege that his property was damaged by contact with any motor-driven equipment or that the water was deposited onto his property by motor-driven equipment. Nor can Bhakta attribute his property damage to any particular piece of motor-driven equipment or a specific time this equipment caused his damages.

As Bhakta cannot allege facts that show the required causal nexus between the use of any motor-driven equipment and his property damage, TxDOT's

governmental immunity has not been waived, and the trial court correctly granted the plea to the jurisdiction on Bhakta's negligence claim.

**IV.    Bhakta cannot assert his nuisance claim in the absence of a valid waiver of immunity.**

Bhakta also alleges a nuisance claim arising from the flooding of his property. CR 82–83. This cause of action, however, is dependent on his inverse condemnation claim, as Bhakta does not plead a separate waiver of sovereign immunity for his nuisance claim, and therefore can only sue for a nuisance that rises to the level of a constitutional taking.

Nuisance liability of a governmental entity arises only when immunity is clearly and unambiguously waived by statute, or when the nuisance rises to the level of a constitutional taking. *Jennings,* 142 S.W.3d at 316; *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004) (holding TxDOT cannot be liable for damage resulting from its expansion of highway without a clear waiver of immunity and retained immunity from a nuisance claim when only basis that could potentially be asserted was for unconstitutional taking).

Bhakta does not allege any waiver of immunity other than the takings clause. CR at 82–83, Appellant's Br. at 22–25, 24 ("Plaintiff would show that he has properly pleaded a takings claim as part of his allegations that the Defendant's

33

created nuisance which damaged his property").[19]  For the reasons discussed above,

Bhakta has not pled and cannot establish a valid takings claim.  Consequently,

TxDOT retains immunity from Bhakta's nuisance cause of action, and the trial court

properly granted the plea to the jurisdiction as to this claim.

## PRAYER

For all the reasons stated herein, the Texas Department of Transportation asks

this Court to affirm the trial court's granting of its First Amended Plea to the

Jurisdiction.  The Texas Department of Transportation also requests this Court

dismiss Bhakta's claims with prejudice, as well as any such further relief, general or

special, to which it may be justly entitled.

<div style="margin-left:40%">

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

</div>

---

[19] Bhakta does not appear to plead or argue that the alleged waiver of immunity for his nuisance claim against TxDOT is alternatively premised on his TTCA § 101.021 cause of action entitled "negligence in the operation of a motor driven equipment." CR at 81–83, Appellant's Br. at 22–25.  However, as the pleadings are unclear, to the extent Bhakta may have also invoked a waiver under Section 101.021 with regard to his nuisance claim, the TTCA similarly fails to provide a valid waiver for reasons discussed in the preceding section of this brief.  Therefore, Bhakta's nuisance claim fails regardless of whether Bhakta asserted a waiver under § 101.021 or the takings clause. *See, e.g., Overby*, 429 S.W.3d at 721.

RANDALL K. HILL
Assistant Attorney General
Chief, Transportation Division

/S/ John Seth Johnson
JOHN SETH JOHNSON
State Bar No. 24083259
john.johnson@texasattorneygeneral.gov
Assistant Attorney General
P. O. Box 12548
Austin, Texas  78711-2548
512/ 463-2004; FAX 512/ 472-3855

ATTORNEYS FOR APPELLEE,
THE TEXAS DEPARTMENT OF
TRANSPORTATION

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that the above computer-generated document contains a total of 8,783 words, not counting the caption, identity of parties and counsel, table of contents, index of authorities, statement of the case, statement of issue presented, signature, certificate of compliance, certificate of service, and appendix, as counted by the program creating said document.

/S/ John Seth Johnson
JOHN SETH JOHNSON
Assistant Attorney General

**CERTIFICATE OF SERVICE**

This is to certify that on this day, September 23, 2015, a true and correct copy of the foregoing *Brief of Appellee The Texas Department of Transportation* has been sent to the Court via electronic mail and has been sent as follows:

*Via E-Service and E-mail*

Aloysius Peter Thaddeus, Jr.
The Law Offices of
V. Gonzalez & Associates, PC.
121 N. 10th Street
McAllen, Texas 78501

Attorney for Appellant Hetul Bhakta d/b/a Budget Inn

/S/ John Seth Johnson
JOHN SETH JOHNSON
Assistant Attorney General